Christopher Q. Pham, SBN: 206697
    E-mail: cpham@criterioncounsel.com
Marcus F. Chaney, SBN: 245227
    E-mail: mchaney@criterioncounsel.com
Criterion Counsel, Law Corporation
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone: (818) 888-7540
Facsimile: (818) 888-7544

Frank Salzano, Esq. (*pro hac vice forthcoming*)
Brady Williamson, Esq. (*pro hac vice forthcoming*)
Salzano Ettinger Lampert & Wilson, LLP
104 West 40th Street, 14th Floor
New York, NY 10018
Telephone: (212) 375-6746
Facsimile: (646) 365-3119
fsalzano@selwlaw.com
bwilliamson@selwlaw.com

*Attorneys for Plaintiffs* Jenni Rivera Enterprises, LLC; and
The Estate Of Dolores J. Rivera

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNI RIVERA ENTERPRISES, LLC, a California limited liability company; and JAQUELIN CAMPOS, an individual, in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA, the successor-in-interest to the rights of Dolores J. Rivera, professionally known as Jenni Rivera,<br><br>Plaintiffs,<br><br>v.<br><br>CINTAS ACUARIO, INC., a California corporation; AYANA MUSICAL, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:23-cv-07847<br><br>**COMPLAINT FOR DAMAGES FOR**<br><br>**COUNT 1:** Copyright Infringement<br>**COUNT 2:** Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114<br>**COUNT 3**: Breach of Contract<br>**COUNT 4:** Violation of California Business and Professions Code § 17200;<br>**COUNT 5:** Violation of Cal. Civ. Code § 3344.1<br>**COUNT 6:** Fraudulent Concealment<br>**COUNT 7:** Conversion<br>**COUNT 8**: Improper Recipient<br><br>**JURY TRIAL DEMANDED** |

- 1 -

COMES NOW, Plaintiffs JENNI RIVERA ENTERPRISES, LLC ("JRE") and Jacquelin Campos, in her capacity as executrix of THE ESTATE OF DOLORES J. RIVERA (the "ESTATE")(collectively, the "PLAINTIFFS"), by and through undersigned counsel, and hereby file this Complaint against Defendants CINTAS ACUARIO, INC. ("CINTAS"); AYANA MUSICAL, INC. ("AYANA"); and DOES 1 through 10, inclusive (the "DOES")(collectively, the "DEFENDANTS"), and allege as follows:

## INTRODUCTION

1.      This matter provides a perfect illustration of the significant and lasting impact that money, power, and greed can have on a family.

2.      Prior and subsequent to the untimely and tragic death of widely-acclaimed recording artist, Dolores Janney Rivera Saavedra p/k/a Jenni Rivera ("JENNI") on December 9, 2012, her father, Pedro Rivera Sr. ("PEDRO"), through CINTAS and AYANA, as well as those companies' affiliates (collectively, the "COMPANIES")—companies owned and controlled by him—has exploited sound recordings,[1] and musical compositions written, recorded, produced, and performed by JENNI during her lifetime, and further, exploited JENNI's name, image, and likeness, to the tune of tens of millions of dollars.

3.      Despite amassing a fortune because of JENNI's popularity with fans around the world, the COMPANIES have failed to account and pay royalties owed to the PLAINTIFFS—entities now headed by JENNI's daughter (and PEDRO's granddaughter) JACQUELIN CAMPOS ("CAMPOS"), while at the same time unlawfully, and shamelessly, exploiting rights to JENNI's sound recordings and musical compositions, among other things, which rightfully belong to PLAINTIFFS as JENNI's successors.

---

[1] The terms "sound recording," "master," and "master recordings" are used interchangeably herein.

4.    PLAINTIFFS have repeatedly sought to urge the COMPANIES to act in accordance with the terms of agreements entered into by JENNI during the early part of her career; to refrain from claiming to own and control rights in JENNI and her music which they unequivocally do not own; and ultimately, to cease and desist from exploiting said rights for their own financial benefit, and to the detriment of PLAINTIFFS.

5.    The COMPANIES have outright refused to do so, and have instead used for their own benefit, and wrongfully retained, significant monies to which PLAINTIFFS are entitled.

6.    PLAINTIFFS have therefore been left with no option but to commence this civil action against the DEFENDANTS, holding each of them liable for their unlawful acts and seeking the return of monies wrongfully withheld from the PLAINTIFFS; and most importantly, have JENNI's musical works and publicity rights—the fruits of her labor and success—and the responsibility of preserving her legacy, returned to PLAINTIFFS as JENNI always intended.

## THE PARTIES

7.    Plaintiff JENNI RIVERA ENTERPRISES, LLC ("JRE") is a limited liability company, organized under the laws of the State of California, with its principal place of business located in the County of Los Angeles, California.

8.    Plaintiff JACQUELIN CAMPOS ("CAMPOS") is an individual residing in the County of Los Angeles, California, and the executrix of THE ESTATE OF DOLORES J. RIVERA (the "ESTATE"), the successor-in-interest to the rights of Dolores Janney Rivera Saavedra p/k/a Jenni Rivera ("JENNI"). All claims asserted by CAMPOS herein are asserted solely on behalf of the ESTATE.

9.    Plaintiff JRE is a corporate entity wholly owned and controlled by the ESTATE, and, among other things, the administrator of JENNI's rights on behalf of the ESTATE.

10.     JRE and the ESTATE are collectively referred to herein as the PLAINTIFFS.

11.     Defendant CINTAS ACUARIO, INC. ("CINTAS") is a California corporation with its principal place of business located in the County of Los Angeles, California.

12.     Defendant AYANA MUSICAL, INC. ("AYANA") is a California corporation with its principal place of business located in the County of Los Angeles, California.

13.     CINTAS and AYANA are owned and controlled by Pedro Rivera ("PEDRO"), and upon information and belief, the daily operation of each entity is now carried out by those companies' General Manager, ROSIE RIVERA FLORES ("ROSIE"), and its President, JUAN RIVERA ("JUAN"), JENNI's brother and a former employee of JRE.

14.     Currently, PLAINTIFFS are unaware of the true and accurate names and capacities of the DOES 1 through 10, inclusive, (the "DOES"). All such unknown entities and/or individuals are hereby sued under fictitious names, however, PLAINTIFFS allege that each participated in, and contributed to, the acts, conduct, omissions, and events which proximately caused the damages to the PLAINTIFFS, as alleged herein. In the event the true and accurate names of the unknown entities and/or individuals become known, PLAINTIFFS shall seek leave to amend this Complaint.

15.     CINTAS and AYANA are collectively referred to herein as the COMPANIES, and together with the DOES, the DEFENDANTS.

## JURISDICTION AND VENUE

16.     This is a civil action seeking, among other things, damages, declaratory relief, and injunctive relief, stemming from DEFENDANTS' copyright infringements; violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114; and

breaches of contract. As such, this action arises under the federal laws of the United States.

17.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338; 17 U.S.C. § 101 et seq. (the "Copyright Act"); and 15 U.S.C. § 1051 et seq. (the "Lanham Act"). This Court also has jurisdiction over the supplemental state law claims asserted herein under 28 U.S.C. § 1367, as all such state law claims constitute the same case and controversy as, and arise under the same nucleus of facts from, the federal law claims asserted herein, permitting this Court, as a matter of convenience and fairness, to maintain supplemental jurisdiction over said claims.

18.   This Court has personal jurisdiction over the DEFENDANTS, and venue is proper in this judicial district under 1391(b)(1), because each of the DEFENDANTS has its principal place of business and/or transacts substantial business in the State of California and in this judicial district, and the harm suffered by PLAINTIFFS, as alleged herein, occurred in the State of California and in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I.   The Lifetime, Achievements, and Legacy of Jenni Rivera

19.   JENNI rose to superstardom in the 1990s and 2000s as an American singer and songwriter of Regional Mexican and Latin Pop music, and broke countless barriers by performing and innovating the historical genres of Banda, Mariachi, and Norteño.

20.   JENNI is widely regarded as one of the most influential Latin recording artists of all time, and having sold over twenty million records worldwide, is the highest-earning Banda singer of all time, earning her the nickname "La Diva de la Banda."

21.   Despite her numerous accomplishments, JENNI's life was not without turmoil, and her popularity, as well as the love and admiration she continues to

garner from fans worldwide to this day, is due in large part to her unabashed willingness to write, speak, and perform about the societal and relationship issues plaguing individuals from all walks of life.

22.     Among her many accolades, JENNI won two Oye! Awards, the Mexican equivalent of a Grammy Award; received nine consecutive Premio Lo Nuestro Awards, given to the Best Female Artist of Regional Mexican Music; and collected two *Billboard* Music Awards, twenty-two *Billboard* Latin Music Awards, and four (4) Latin Grammy nominations.

23.     Her album *Jenni*, released in 2008, debuted at #1 on the *Billboard* Top Latin Albums Chart, as did her album *La Misma Gran Señora,* which was released shortly after her death in 2012 and resulted in JENNI being named the top and best-selling Latin artist of 2013 by *Billboard* magazine.

24.     In 2011, JENNI was awarded a Star on the Las Vegas Walk of Stars, and in 2024 will receive a Star on the infamous Hollywood Walk of Fame.

25.     JENNI's music has been used, reproduced, and performed millions upon millions of times over the years, and has likewise been distributed in retail stores, by digital download, and on the radio, television, and internet throughout the world.

26.     In addition to the everlasting influence of her music, JENNI's greatest and most important impact came through her charitable work on behalf of the vulnerable and less fortunate.

27.     During her life, JENNI established The Jenni Rivera Love Foundation, which is currently managed by the ESTATE and provides assistance for single mothers and victims of domestic and sexual abuse.

28.     JENNI was named spokeswoman for the National Coalition Against Domestic Violence in 2010, and in honor of her devotion to charity and her community, the Los Angeles City Council officially declared August 6th to be "Jenni

- 6 -

Rivera Day," and later opened the "Jenni Rivera Memorial Park" in her childhood home of Long Beach, California.

29.     In May of 2016, the Jenni Rivera Love Foundation partnered with New Life Beginnings—a shelter for pregnant women and their children—to create "Jenni's Refuge," a shelter in Long Beach for women and children suffering from domestic violence, and physical, emotional, and sexual abuse.

30.     The shelter was financed by the proceeds of "Jenni Vive 2015," a concert held in Long Beach on July 2, 2015, to commemorate JENNI's life and legacy.

31.     Simply put, both JENNI and her music have withstood, and will continue to withstand, the test of time.

## II.   Jenni Rivera Enters Into Her First Recording Agreement With Her Father's Record Company

32.     JENNI first began performing music sometime in 1992 and entered into her first recording agreement with CINTAS on or about April 15, 1993 (the "1993 Recording Agreement"). *See* Exhibit A, 1993 Recording Agreement.

33.     The 1993 Recording Agreement obligated JENNI to record exclusively on behalf of CINTAS for a period of three years, and provided CINTAS with several rights to the sound recordings and albums recorded, produced, and distributed under the 1993 Recording Agreement, including the exclusive right to register copyrights in such sound recordings and albums (and all renewals thereof), as well as the exclusive rights under 17 U.S.C. §§ 106 and 114 to, among other things, reproduce, prepare derivative works, and publicly perform the sound recordings and albums, and permit third parties to exploit the rights belonging to CINTAS. *See Id.*

34.     In addition to its rights to the sound recordings and albums, by way of the 1993 Recording Agreement, CINTAS was also granted the right to exploit JENNI's name, image, and likeness ("NIL"), which included the right to

manufacture and distribute merchandise bearing JENNI's NIL, solely in connection with the advertising, promotion, and sale of the sound recordings and albums recorded, produced, and distributed during the term of the agreement. *See Id*.

35.    In consideration for JENNI's granting of said rights, CINTAS was obligated to provide JENNI with accounting statements, and make royalty payments to her, in an agreed-upon amount, on a quarterly basis, with regard to the use and exploitation of the sound recordings and albums, and separately, with regard to the earnings realized from the use and exploitation of JENNI's NIL in connection with the sale of merchandise and otherwise. *See Id*.

36.    The obligation to account and pay royalties owed to JENNI in connection with the sound recordings and albums recorded, produced, and distributed under the 1993 Recording Agreement was never waived or otherwise terminated, nor was the obligation to do so in connection with the merchandising and other exploitations of JENNI's NIL.

37.    Thus, the foregoing obligations subsisted in favor of PLAINTIFFS, as JENNI's successors-in-interest, following her death in December of 2012.

38.    Upon information and belief, under the 1993 Recording Agreement, JENNI recorded and the COMPANIES and/or other third parties authorized by the COMPANIES, including the DOES, distributed and earned revenue from the following albums:

> (a) *La Maestra*, released in 1993, and containing the following sound recordings: "Nu Vuelvo Ni De Chiste," "La Batalla," "Nada de Ti," Mil heridas," "Una Lagrima," Sueño de Amor," "La Maestra," "Como Niño Perdido," and "Pa Nada Me Sirves";

(b) *Por Un Amor,* released in 1994, and containing the following sound recordings: "Por Un Amor," "Esperando Que Me Quieras," "Collar de Penas," "Tengo Miedo," "Soy Madre Soltera," "Trono Caido," "Estados Que Quier," "El Viejo y Yo," "Una Estrella Lejana," "Marisela y Chalino," "Viejo Vaquetón," and "Así Soy Yo";

(c) *Adiós a Selena*, released in 1995, and containing the following sound recordings: "Recuerdos de Selena," "El Columpio," "La Novia del Piebe," "Para un Gran Señor," "Los Ojales," "Son Habladas," "Adíos a Selena," "Ni Cura Ni Juez," "Los que Roban Dinero," "Vida de Perro," "Los dos amantes," and "Que Te Vaya Bonito"; and

(d) *La Chacalosa*, released in 1995, and containing the following sound recordings: "La Chacalosa," "También Las Mujeres Pueden," "Libro Abierto," "Cruz de Madera," "Embárgame a Mi," "Por Una Rencilla Vieja," "Si Tu Pensabas," "La Perra Contrabandista," "Cuando el Destino," "Mi Gusto Es," and "Ni Me Debe Ni Te Debo."

39.    The foregoing sound recordings and albums, along with any other singles recorded and produced by JENNI during the term of the 1993 Recording Agreement, are collectively referred to herein as the "1993 Musical Works."

40.    CINTAS, and upon information and belief, the other DEFENDANTS, exploited, and continue to exploit, the 1993 Musical Works and have earned, and continue to earn, significant monies therefrom.

41.     CINTAS, and upon information and belief, the other DEFENDANTS, have also exploited, and continue to exploit, JENNI's NIL in connection with the advertising, sale, and promotion of the 1993 Musical Works and otherwise.

42.     Notably, neither CINTAS, nor any of the other DEFENDANTS, were granted any rights to the musical compositions written and produced by JENNI under the 1993 Recording Agreement, and accordingly, had no right to exploit said musical compositions, or to permit each other or any other third parties to exploit said musical compositions at any time. *See Id*.

43.     The DEFENDANTS have earned significant monies from their exploitation of the 1993 Musical Works and the musical compositions contained therein, as well as from their exploitation of JENNI's NIL in connection therewith, and CINTAS has repeatedly and continuously breached the terms of the 1993 Recording Agreement by, among other things, failing for a number of years, and despite being notified of such, to account and pay royalties owed to PLAINTIFFS pursuant to the 1993 Recording Agreement.

44.     Upon information and belief, the DEFENDANTS have used for their own personal and financial benefit, and/or wrongfully transferred or retained, such monies, which rightfully belong to PLAINTIFFS.

45.     As a result of misrepresentations made by PEDRO, ROSIE, and JUAN in their capacities as owner, executives, and representatives of CINTAS, regarding CINTAS' ownership of the rights in, and use and exploitations of, the 1993 Music Works, and JENNI's NIL, PLAINTIFFS were unaware of the infringements and failures to comply with the terms of the 1993 Recording Agreement, until in or around January of 2022 when CAMPOS became the executrix of the ESTATE.

46.     ROSIE and JUAN, in their capacity as executives of JRE, also actively concealed CINTAS' wrongful acts from PLAINTIFFS through misrepresentations made to JENNI's children — the rightful successors of the ESTATE — including

- 10 -

CAMPOS, as well as other executives, employees, and representatives of JRE, concerning the use and exploitation of the 1993 Musical Works, and JENNI's NIL, as well as CINTAS' repeated failures to comply with the terms of the 1993 Recording Agreement, resulting in PLAINTIFFS being prevented from learning of the foregoing acts until in or around January of 2022.

47.    The misrepresentations and concealment of material facts by PEDRO, ROSIE, and JUAN in their corporate capacities, as outlined herein, occurred, upon information and belief, with the intention of concealing said unlawful acts from JENNI's children —the rightful successors of the ESTATE — including CAMPOS, as well as other executives, employees, and representatives of JRE, such that CINTAS could continue reaping the benefits of said unlawful acts to the detriment of PLAINTIFFS.

**III.    Jenni Rivera Enters Into Two Subsequent Recording Agreements With Cintas**

48.    On or about September 1, 1995, JENNI entered into a second exclusive recording agreement with CINTAS (the "1995 Recording Agreement"). *See* Exhibit B, 1995 Recording Agreement.

49.    The initial term of the 1995 Recording Agreement commenced on September 1, 1995, and expired, according to the agreement's terms, ten months following delivery by JENNI of the first master, i.e., original sound recording, owed by her under the 1995 Recording Agreement. *See Id.*

50.    The 1995 Recording Agreement also granted CINTAS six separate and consecutive options to extend the term, with each extending the term until the later of one year from commencement of each such option period, or ten months after JENNI's delivery of the first master to be delivered during such option period. *See Id.*

51.     During the initial term, and option periods two through five, JENNI was obligated to provide CINTAS with enough masters to constitute an album. *See Id*.

52.     Further, CINTAS was provided a number of rights to the sound recordings and albums recorded, produced, and distributed under the 1995 Recording Agreement, including the exclusive right to register copyrights in such sound recordings (and all renewals thereof), as well as the exclusive rights under 17 U.S.C. §§ 106 and 114 to, among other things, reproduce, prepare derivative works, and publicly perform the sound recordings, and permit third parties to exploit the rights belonging to CINTAS. *See Id*.

53.     In addition to its rights to the sound recordings, CINTAS was also granted the right to exploit JENNI's NIL, which included the right to manufacture and distribute merchandise bearing JENNI's NIL, in connection with the advertising, promotion, and sale of the sound recordings and albums recorded, produced, and distributed during the term of the agreement. *See Id*.

54.     In consideration for JENNI's granting of said rights, CINTAS was obligated to provide JENNI with accounting statements, and make royalty payments to her, in an agreed-upon amount, on a semi-annual basis, with regard to the use and exploitation of the sound recordings and albums, and separately, with regard to the earnings realized from the use and exploitation of JENNI's NIL in connection with the sale of merchandise and otherwise. *See Id*.

55.     The obligation to account and pay royalties owed to JENNI in connection with the sound recordings and albums recorded, produced, and distributed under the 1995 Recording Agreement was never waived or otherwise terminated, nor was the obligation to do so in connection with the merchandising and other exploitations of JENNI's NIL.

56.     Thus, the foregoing obligations subsisted in favor of PLAINTIFFS, as JENNI's successors-in-interest, following her death in December of 2012.

57.    On or about April 21, 1996, JENNI entered into a third exclusive recording agreement with CINTAS (the "1996 Recording Agreement"). *See* Exhibit C, 1996 Recording Agreement.

58.    The initial term of the 1996 Recording Agreement commenced on April 21, 1996, and like the 1995 Recording Agreement, the initial term expired, according to the agreement's terms, ten months following delivery by JENNI of the first master, i.e., original sound recording, owed pursuant to the 1996 Recording Agreement. *See Id*.

59.    The 1996 Recording Agreement also granted CINTAS six separate and consecutive options to extend the term, with each extending the term until the later of one year from commencement of each such option period, or ten months after JENNIS's delivery of the first master to be delivered during such option period. *See Id*.

60.    During the initial term, and option periods two through five, JENNI was obligated to provide CINTAS with enough masters to constitute an album. *See Id*.

61.    Further, CINTAS was provided a number of rights to the sound recordings and albums recorded, produced, and distributed under the 1996 Recording Agreement, including the exclusive right to register copyrights in such sound recordings (and all renewals thereof), as well as the exclusive rights under 17 U.S.C. §§ 106 and 114 to, among other things, reproduce, prepare derivative works, and publicly perform the sound recordings, and permit third parties to exploit said rights. *See Id*.

62.    In addition to its rights to the sound recordings, CINTAS was also granted the right to exploit JENNI's NIL, which included the right to manufacture and distribute merchandise bearing JENNI's NIL, in connection with the advertising, promotion, and sale of the sound recordings and albums recorded, produced, and distributed during the term of the agreement. *See Id*.

63.     In consideration for JENNI's granting of said rights, CINTAS was obligated to provide JENNI with accounting statements, and make royalty payments to her, in an agreed-upon amount, on a semi-annual basis, with regard to the use and exploitation of the sound recordings and albums, and separately, with regard to the earnings realized from the use and exploitation of JENNI's NIL in connection with the sale of merchandise and otherwise. *See Id.*

64.     The obligation to account and pay royalties owed to JENNI in connection with the sound recordings and albums recorded, produced, and distributed under the 1996 Recording Agreement was never waived or otherwise terminated, nor was the obligation to do so in connection with the merchandising and other exploitations of JENNI's NIL.

65.     Thus, the foregoing obligations subsisted in favor of PLAINTIFFS, as JENNI's successors-in-interest, following her death in December of 2012.

66.     Pursuant to both the 1995 and 1996 Recording Agreements, CINTAS was required to pay JENNI, at minimum, $6,000.00 per year in royalties. *See Id.*

67.     Upon information and belief, under the 1995 and 1996 Recording Agreement, JENNI recorded and the COMPANIES and/or other third parties authorized by the COMPANIES, including the DOES, distributed and earned revenue from the following albums:

> (a) *Si Quieres Verme Llorar*, released in 1999, and containing the following sound recordings: "Brinco Dieras (Con Mariachi)", "Perdonar Es Olvidar," "Llanto rojo," "Lagrimas, Sudor y Sangre" "La Puerta de Alcalá," Si Quieres Verme Llorar," Vivir Sin Tu Cariño (Without You)," Nostros," "Comon vivir sin verte (How do I Live)," "Tonto," and "Yo te agradezco";

- 14 -

(b) *Reyna de reynas*, released in 1999, and containing the following sound recordings: "Reyna de reynas," "El desquite," "El orgullo de mi padre," "Poppuri de chelo," "Los traficantes," La reyna es el rey," "La martina," "El bato gacho," "La maestra del contraband," Saludame a la tuya," and "Las cachanillas";

(c) *Que Me Entierren Con la Banda*, released in 2000, and containing the following sound recordings: "Que Me Entierren Con la Banda," "Como Tu Decidas," "Que un Rayo te la parta," "Las Malandrinas," "Son habladas," "Ni estando loca," "Mañana (Te Acordarás)," "Sinaloa Princesa Norteña," and "Rosita Alvirez";

(d) *Se Las Voy a Dar A Otro*, released in 2001, and containing the following sound recordings: "Angel Baby," "No Vas A Jugar," "Cuando Abras Los Ojos," "El Nopal," "Tristeza Pasajera," "Chicana Jalisciense," "Ni Tu Esposa, Ni Tu Amante, Ni Tu Amiga," "Se Law Voy A Dar A Otro," "Se Marchó," and "Escándalo;

(e) *Déjate amar*, released in 2001, and containing the following sound recordings: "Una Noche Me Embriague," "Dejate amar," "Mi Vida Loca (2001)," Querida Socia," "Y te me vas," "Madre Soltera," "El Ultimo Adios," "Agente de ventas," "Cuando Yo Quiera Has De Volver," and "Wasted Days and Wasted Nights";

(f) *Homenaje A Las Grandes*, released in 2003, and containing the following sound recordings: "La Papa Sin Catsup," "A Escondidas," "Por Un Amor, Cucurrucucú Paloma," "Ese hombre," "Juro Que Nunca Volvere," "La tequilera," "Ahora vengo a verte," "Hacer el amor con otro," "Homenaje a mi madre," "Where Did Our Love Go," "La Papa Sin Catsup (Versión Norteña)," "A Escondidas (Versión Norteña)," "Juro Que Nunca Volveré (Versión Norteña)," and Hacer el amor con otro (Versión Norteña)

(g) *Simplemente La Mejor*, a compilation album released in 2004, and containing the following sound recordings: "Querida Socia," "Las Malandrinas," "Cuando Abras Los Ojos," "Que Me Entierren Con La Banda," "Mi Vida Loca (2001)," "Tristeza Pasajera (Ilusión Pasajera)," "Reina De Reinas," "La Chacalosa," "Las Mismas Costumbres," "Amiga Si Lo Ves," "Simplemente La Mejor," "Las Mismas Costumbres (Versión Norteña)," Amigas Si Lo Ves (Versión Norteña)," and "Amiga Si Lo Ves (Versíon Pop);

(h) *Parrandera, Rebelde y Atrevida*, released in 2005, and containing the following sound recordings: "Parrandera, Rebelde y Atrevida," "Que Me Vas A Dar," "De Contrabando," "Brincos Dieras," "No Vas A Creer," "Imbécil," "No Me Pregunten Por Él," "Qué Se Te Olvidó," "Jefa de Jefas," "Me Siento Libre," and "Cuando Muere Una Dama"; and

(i) *Parrandera, Rebelde y Atrevida (Deluxe),* released in 2005, and containing the following sound recordings: "Parrandera, Rebelde y Atrevida," "Que Me Vas A Dar," "De Contrabando," "Brincos Dieras," "No Vas A Creer," "Imbécil," "No Me Pregunten Por Él," "Qué Se Te Olvidó," "Jefa de Jefas," "Me Siento Libre," and "Cuando Muere Una Dama," and "La Mentada Contestada."

68.     The foregoing albums and sound recordings, along with any other singles recorded by JENNI during the term of the 1995 and 1996 Recording Agreements, are collectively referred to herein as the "1995-1996 Musical Works."

69.     CINTAS, and upon information and belief the other DEFENDANTS exploited, and continue to exploit, the 1995-1996 Musical Works and have earned, and continue to earn, significant monies therefrom.

70.     CINTAS, and upon information and belief, the other DEFENDANTS, have also exploited, and continue to exploit, JENNI's NIL in connection with the advertising, sale, and promotion of such musical works, and otherwise.

71.     However, neither CINTAS, nor any of the other DEFENDANTS, was granted any rights to the musical compositions written and produced by JENNI under the 1995 and 1996 Agreements, and accordingly, had no right to exploit said musical compositions, or to permit each other or any other third parties to exploit said musical compositions at any time. *See* Exhibit B, *see also* Exhibit C.

72.     Upon information and belief, the 1995 and 1996 Recording Agreements expired, according to the terms thereof, no later than August 21, 2005.

73.     Upon information and belief, aside from the 1993, 1995, and 1996 Recording Agreements, no other written agreements between JENNI and the

DEFENDANTS, through which JENNI transferred rights in and to her sound recordings, musical compositions, and/or NIL, have ever existed.

74.     The DEFENDANTS have earned significant monies from their exploitation of the 1995-1996 Recording Agreement Musical Works, and the musical compositions contained therein, as well as from their exploitation of JENNI's NIL in connection therewith, and otherwise, and CINTAS has repeatedly and continuously breached the terms of the 1995 and 1996 Recording Agreements by, among other things, failing for a number of years, and despite being notified of such, to account and pay royalties owed to PLAINTIFFS pursuant to the 1995 and 1996 Recording Agreements.

75.     Upon information and belief, the DEFENDANTS have used for their own personal and financial benefit, and/or wrongfully transferred or retained, such monies, which rightfully belong to the PLAINTIFFS.

76.     As a result of misrepresentations made by PEDRO, ROSIE, and JUAN in their capacities as owner, executives, and representatives of CINTAS, regarding CINTAS' ownership in the rights in, and use and exploitations of, the 1995 and 1996 Music Works, and JENNI's NIL, PLAINTIFFS were unaware of the infringements and failures to comply with the terms of the 1993 Recording Agreement, until in or around January of 2022 when CAMPOS became the executrix of the ESTATE.

77.     ROSIE and JUAN, in their capacity as executives of JRE, also actively concealed CINTAS' wrongful acts from PLAINTIFFS through misrepresentations made to JENNI's children — the rightful successors of the ESTATE — including CAMPOS, as well as other executives, employees, and representatives of JRE, concerning the use and exploitation of the 1995 and 1996 Musical Works, and JENNI's NIL, as well as CINTAS' repeated failures to comply with the terms of the 1995 and 1996 Recording Agreements, resulting in PLAINTIFFS being prevented from learning of the foregoing acts until in or around January of 2022.

78.     The misrepresentations and concealment of material facts by PEDRO, ROSIE, and JUAN in their corporate capacities, as outlined herein, occurred, upon information and belief, with the intention of concealing said unlawful acts from JENNI's children —the rightful successors of the ESTATE — including CAMPOS, as well as other executives, employees, and representatives of JRE, such that CINTAS could continue reaping the benefits of said unlawful acts to the detriment of PLAINTIFFS.

**IV.    Ayana Enters Into A Recording Agreement With FONOVISA Pertaining to Jenni Rivera**

79.     On or about August 15, 2005, FONOVISA Records, a division of Univision Music LLC ("FONOVISA"), entered into an agreement with AYANA, through which AYANA purported to license the exclusive recording services of JENNI to FONOVISA (the "2005 Recording Agreement").[2] *See* Exhibit D, 2005 Recording Agreement.

80.     In addition to purportedly transferring the exclusive recording services of JENNI to FONOVISA, AYANA also purportedly granted FONOVISA the right to use, exploit, and administer, and permit other third parties to use, exploit, and administer, the sound recordings, albums, and other musical works delivered to FONOVISA under the 2005 Recording Agreement. *See Id.*

81.     FONOVISA was also granted the right to use, exploit, and administer, and permit other third parties to use, exploit, and administer, the rights to the sound recordings contained on the albums *Que Me Entierren Con La Banda*, *Dejate Amor*, *Se Las Voy A Dar A Otro*, and *Homenaje A Las Grandes* throughout the term of the

---

[2] Upon information and belief, sometime prior to August 15, 2005, CINTAS and AYANA entered into an agreement, pursuant to which CINTAS granted AYANA certain rights CINTAS had obtained from JENNI through the 1995 and 1996 Recording Agreements.

2005 Recording Agreement, and throughout agreed-upon exploitation and sell-off periods thereafter. *See Id.*; *see also* ¶ 67, *supra*.

82.     For clarity, AYANA purportedly granted FONOVISA the exclusive right to register copyrights in the sound recordings, albums, and other musical works recorded and produced under the 2005 Recording Agreement, and the exclusive rights under 17 U.S.C. §§ 106 and 114 to, among other things, reproduce, prepare derivative works, and publicly perform the sound recordings delivered to FONOVISA under the 2005 Recording Agreement, as well as the sound recordings contained on the albums *Que Me Entierren Con La Banda*, *Dejate Amor*, *Se Las Voy A Dar A Otro*, and *Homenaje A Las Grandes* throughout the term of the 2005 Recording Agreement, and throughout agreed-upon exploitation and sell-off periods thereafter. *See Id.*

83.     In addition, AYANA purportedly granted FONOVISA the exclusive right to permit third parties to exploit the musical works, and moreover, granted FONOVIA the separate and distinct right to exploit JENNI's NIL, including the right to manufacture and distribute merchandise bearing JENNI's NIL, in connection with the advertising, promotion, and sale of the sound recordings and albums recorded, produced, and distributed during the term of the 2005 Recording Agreement. *See Id.*

84.     FONOVISA was also granted the right to do the same in connection with the advertising, promotion, and sale of the sound recordings contained on the albums *Que Me Entierren Con La Banda*, *Dejate Amor*, *Se Las Voy A Dar A Otro*, and *Homenaje A Las Grandes,* throughout the term of the 2005 Recording Agreement, and throughout agreed-upon exploitation and sell-off periods thereafter. *See Id.*

85.     AYANA also unlawfully granted FONOVISA the right to use and reproduce the musical compositions rightfully owned and controlled by JENNI, and to distribute and administer such musical compositions throughout the United States

and Canada. *See Id*.

86.     The initial term of the 2005 Recording Agreement commenced on August 15, 2005—shortly before expiration of the 1995 and 1996 Recording Agreements—and the agreement provided FONOVISA with three separate options to extend the term for an agreed-upon length of time. *See Id*.

87.     The 2005 Recording Agreement required FONOVISA to make certain, specified payments to AYANA, with AYANA being required to make minimum yearly payments in the following amounts to JENNI: (i) $9,000.00 in the first contract year; (ii) $12,000.00 in the second contract year; and (iii) $15,000.00 in the third through seventh contract years, as well as in any succeeding contract years. *See Id*.

88.     FONOVISA exploited and administered, and upon information and belief, FONOVISA and/or the DEFENDANTS continue to exploit and administer, the sound recordings recorded and produced by JENNI during the term of the 2005 Recording Agreement, and upon information and belief, such parties continue to make payments to AYANA in connection with their exploitation and administration.

89.     Importantly, AYANA expressly represented to FONOVISA, within the 2005 Recording Agreement, that AYANA was legally permitted to grant the rights it purported to grant therein, including the right to use and exploit, and permit other third parties to use and exploit, musical compositions owned and controlled by JENNI, and further, represented that AYANA was permitted to grant said rights to FONOVISA and would be legally able to do so throughout the term of the 2005 Recording Agreement. *See Id*.

90.     Such representations were false and intended to mislead and induce FONOVISA into entering into the 2005 Recording Agreement, considering neither CINTAS nor AYANA, nor any other third parties, including the other DEFENDANTS, were ever transferred rights in and to musical compositions written

- 21 -

and produced by JENNI at any time, and further, upon information and belief, that JENNI's contractual relationship with CINTAS and AYANA expired no later than April 21, 2005—six days after the effective date of the 2005 Recording Agreement.

91.   Upon information and belief, the only rights CINTAS and/or AYANA were legally permitted to grant to the other DEFENDANTS, or any other third parties, after April 21, 2005, were the rights to the 1993 and 1995-1996 Musical Works, as well as the right to exploit JENNI's NIL, including the right to manufacture and distribute merchandise bearing JENNI's NIL, solely in connection with the advertising, promotion, and sale of the 1993 and 1995-1996 Musical Works.

92.   Upon information and belief, in furtherance of its scheme, AYANA forged JENNI's signature on the inducement letter provided to FONOVISA in connection with the 2005 Recording Agreement as, upon information and belief, JENNI had previously authorized CINTAS and AYANA to agree to terms on her behalf and execute specified agreements in her name, but had revoked such authorization prior to the execution of the 2005 Recording Agreement.

93.   The DEFENDANTS have earned, and continue to earn, significant monies through the exploitation of the sound recordings, musical compositions, and other musical works written, recorded, and produced under the 2005 Recording Agreement.

94.   The DEFENDANTS have also earned, and continue to earn, significant monies from their own, and FONOVISA's, exploitation of JENNI's NIL in connection the foregoing musical works and otherwise.

95.   Upon information and belief, the DEFENDANTS have used for their own personal and financial benefit, and/or wrongfully transferred or retained, such monies, which rightfully belong to the PLAINTIFFS.

96.   PEDRO, ROSIE, and JUAN, in their capacities as owners, executives, and/or representatives of CINTAS, AYANA, and JRE made misrepresentations to,

and actively concealed CINTAS and AYANA's unlawful acts from, JENNI's children — the rightful successors of the ESTATE — including CAMPOS, as well as other executive, employees, and representatives of JRE, resulting in PLAINTIFFS being unaware of the foregoing infringements and misrepresentations of CINTAS and AYANA, as well as AYANA's breaches of the obligations owed to JENNI and PLAINTIFFS under the 2005 Recording Agreement, until in or around January of 2022 when CAMPOS became the executrix of the ESTATE.

**V.     Pedro Rivera and the Companies Other Unauthorized and Illegal Acts**

97.     Except for the rights set forth above, neither CINTAS, nor any of the other DEFENDANTS, were granted any additional rights in and to the sound recordings, musical compositions, and other musical works of JENNI, and further, were granted no additional rights to use and exploit JENNI's NIL.

98.     In fact, except for the rights granted to CINTAS pursuant to the 1993, 1995, and 1996 Recording Agreements, all rights in and to JENNI's sound recordings, musical compositions, other musical works, and NIL belong exclusively to PLAINTIFFS, and/or to other third parties to which JENNI and/or PLAINTIFFS lawfully transferred such rights.

99.     As they were legally permitted to do, PLAINTIFFS registered copyrights in the name of JRE for a number of sound recordings, musical compositions, and other musical works written, recorded, and produced by JENNI during her lifetime, *see, e.g.*, United States Copyright Office Public Catalog of JRE Registrations, attached as Exhibit E hereto, and upon JENNI's death in 2012, the ESTATE became the lawful owner of any and all copyrights registered by JENNI during her lifetime (collectively, the "JRE Copyrighted Works").

100.     As it relates to sound recordings, musical compositions, and other musical works not registered by PLAINTIFFS with the United States Copyright Office (the "Copyright Office"), PLAINTIFFS are the sole parties with ownership

- 23 -

and legal authority to register copyrights pertaining thereto, or to otherwise use and exploit, or permit other third parties to use and exploit, such sound recordings, musical compositions, and other musical works.

101.   Despite the foregoing, the DEFENDANTS have wrongfully registered copyrights, and wrongfully permitted other third parties to register copyrights, in and to sound recordings, musical compositions, and other musical works, and have done so without authority from JENNI and/or the PLAINTIFFS.

102.   Additionally, the DEFENDANTS have used and exploited the JRE Copyrighted Works, as well as sound recordings, musical compositions, and other musical works which PLAINTIFFS own and control, and have permitted other third parties to use and exploit such musical works, for DEFENDANTS' financial gain and in contravention of PLAINTIFFS' ownership rights without JENNI and/or PLAINTIFFS' consent.

103.   PLAINTIFFS are also the registered owners of numerous trademarks related to JENNI, her music, and her NIL (the "JRE Registered Marks"), and thus, the only persons legally permitted to use and commercially exploit the JRE Registered Marks. *See, e.g.,* United States Patent and Trademark Office Records of JRE Registrations, attached as Exhibit F hereto.

104.   Despite the foregoing, the DEFENDANTS have used and exploited, permitted others to use and exploit, and continue to use and exploit and permit other third parties to use and exploit the JRE Registered Marks for commercial purposes, and have earned, and continue to earn significant monies therefrom, including through the manufacture, sale, and distribution of merchandise bearing the JRE Registered Marks, as DEFENDANTS have in connection with JENNI's NIL.

105.   The DEFENDANTS' impermissible acts, as outlined herein, far exceed the limited rights granted to them pursuant to the 1993, 1995, and 1996 Recording Agreements, and thus, constitute copyright infringement, violations of Section 43(a)

of the Lanham Act, 15 U.S.C. § 1114, and violations of Cal. Civ. Code § 3344.1, among other violations.

106.    Upon information and belief, the DEFENDANTS came to an agreement with each other, and were at all times co-conspirators acting in the course and scope of said relationship, and with each other's authority, knowledge, consent, and/or ratification, in connection with the foregoing scheme.

## VI.    Plaintiffs' Requests for Non-Economic Remedies

### A. Accounting and Constructive Trust

107.    PLAINTIFFS not only require, but are entitled to, an order requiring the DEFENDANTS to provide a full accounting of all monies earned through their use and exploitation of JENNI's sound recordings, musical compositions, and other musical works, including the JRE Registered Copyrights, as well as monies earned from their use and exploitation of JENNI's NIL and the JRE Registered Marks.

108.    Without question, a significant amount of DEFENDANTS' earnings therefrom are the result of unlawful acts, including but not limited to violations of federal and California state laws, and upon information and belief, the DEFENDANTS have engaged in other unauthorized and unlawful acts and business transactions through which the DEFENDANTS have earned significant monies rightfully belonging to the PLAINTIFFS.

109.    Accordingly, PLAINTIFFS are entitled to an order requiring the DEFENDANTS to provide a full accounting to PLAINTIFFS of any and all monies earned from DEFENDANTS' use and exploitation of JENNI's sound recordings, musical compositions, and other musical works, including the JRE Registered Copyrights, as well as monies earned from their use and exploitation of JENNI's NIL and the JRE Registered Marks.

110.    PLAINTIFFS are also entitled to an order establishing a constructive trust on any and all funds acquired and withheld from PLAINTIFFS by the

DEFENDANTS, as PLAINTIFFS maintain an ownership and property interest in such monies.

### B. Recission

111. JENNI entered into the 1993, 1995, and 1996 Recording Agreements with CINTAS, and JENNI's rights pursuant thereto subsisted in favor of the PLAINTIFFS following her death in December of 2012.

112. Despite JENNI having performed all obligations owed to CINTAS in connection with the 1993, 1995, and 1996 Recording Agreements, CINTAS has repeatedly and continuously exploited the rights granted to it by way of said agreements, earning significant monies therefrom, while at the same time disregarding and outright refusing to comply with the express terms of such agreements.

113. Specifically, CINTAS has failed to perform its own obligation to account and pay agreed-upon royalties owed to the PLAINTIFFS pursuant to the 1993, 1995, and 1996 Agreements.

114. As such, PLAINTIFFS are entitled to rescind the 1993, 1995, and 1996 Agreements, as well as all rights granted to, and by, CINTAS pursuant thereto, and further, to have such rights restored to PLAINTIFFS due to CINTAS' repeated and continuous breaches of said agreements.

### C. Declaratory Relief

115. PLAINTIFFS seek a declaratory judgment with regard to the rights of PLAINTIFFS, relative to the rights of the DEFENDANTS, in and to JENNI's sound recordings, musical compositions, and NIL rights which were granted to CINTAS pursuant to the 1993, 1995, and 1996 Recording Agreements, and which PLAINTIFFS' contend now rightfully belong to PLAINTIFFS as JENNI's successor-in-interest.

116.     Further, PLAINTIFFS seek a declaratory judgment regarding the rights of PLAINTIFFS, relative to the rights of the DEFENDANTS, in and to all other sound recordings, musical compositions, and other musical works, including the JRE Registered Copyrights, and further, a declaratory judgment regarding PLAINTIFFS' rights, relative to those of DEFENDANTS, as it relates to JENNI's NIL.

117.     Due to the DEFENDANTS' repeated and continuous wrongful acts, and utter indifference to PLAINTIFFS and their rights, PLAINTIFFS, as JENNI's successors-in-interest, are legally entitled to all such rights, and thus, seek an order declaring such.

118.     This request is permitted at this time, as the issues described herein constitute an actual case and controversy, and directly implicate the rights of both the PLAINTIFFS and DEFENDANTS, both at the present time and persisting into the future.

**D. Temporary and Permanent Injunction**

119.     PLAINTIFFS seek temporary and permanent injunctive relief regarding the DEFENDANTS' rights, and an order requiring the DEFENDANTS to immediately cease and desist from engaging in the unauthorized and wrongful use and exploitations of JENNI's sound recordings, musical compositions, and other musical works, including the JRE Registered Copyrights, as well as requiring the DEFENDANTS to immediately cease and desist from the use and exploitations of JENNI's NIL and the JRE Registered Marks.

120.     The DEFENDANTS' wrongful acts include but are not limited to claiming to maintain legal ownership and control of the rights to JENNI's sound recordings, musical compositions, other musical works, and NIL.

121.     PLAINTIFFS have set forth a clear and substantial likelihood of success on the merits of their claims against the DEFENDANTS, and have suffered, and will continue to suffer, irreparable harm, including harm to PLAINTIFFS'

- 27 -

professional reputation and goodwill, as a result of the DEFEDANTS' unauthorized and wrongful acts, in the event such injunctive relief is not granted.

122. Granting the injunctive relief sought by PLAINTIFFS will alleviate the ongoing harm suffered by PLAINTIFFS, which harm far outweighs any potential hardship the granting of such relief could potentially have on the DEFENDANTS, who have spent years using, transferring, and/or wrongfully withholding, significant monies rightfully belonging to PLAINTIFFS.

123. Further, granting such relief will not adversely affect public policy or the public interest, but will instead promote justice and equity.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Copyright Infringement

### (Against all Defendants)

124. PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 123 above as if fully set forth herein.

125. PLAINTIFFS are the rightful owners of the copyrights in the JRE Copyright Works, *see e.g*., Exhibit E, which includes the exclusive rights under 17 U.S.C. §§ 106 and 114 to, among other things, reproduce, prepare derivative works, and publicly perform the sound recordings, musical compositions, and other works, and to permit third parties to use and exploit such rights.

126. Therefore, PLAINTIFFS are entitled and authorized to protect such rights against copyright infringement, including that of the DEFENDANTS.

127. The DEFENDANTS have repeatedly and continuously infringed on PLAINTIFFS' copyrights by, among other things, using, reproducing, publicly performing, and permitting others to use, reproduce, and publicly perform, the JRE Copyrighted Works, and have done so without PLAINTIFFS' authorization, earning significant monies therefrom.

128.    Each and every use and exploitation of the JRE Copyrighted Works by the DEFENDANTS, as well as uses and exploitations done with the authorization of any of the DEFENDANTS, constitutes a separate and distinct act of infringement.

129.    The DEFENDANTS have acted willfully, deliberately, and with prior notification and knowledge of PLAINTIFFS' ownership rights, or at minimum, in reckless disregard of PLAINTIFFS' ownership rights.

130.    PLAINTIFFS have been damaged as a direct and proximate result of the DEFENDANTS' infringements and are therefore liable to PLAINTIFFS for willful copyright infringement under 17 U.S.C. § 501.

131.    PLAINTIFFS are entitled to receive the actual damages and profits obtained by the DEFENDANTS, pursuant to 17 U.S.C. § 504, or in the alternative, are entitled to statutory damages due to the DEFENDANTS' willful copyright infringement.

132.    As set forth above, PLAINTIFFS are also entitled to non-economic relief, including declaratory and injunctive relief, pursuant to 17 U.S.C. § 502, enjoining the DEFENDANTS from further infringements, and are entitled to an order, pursuant to 17 U.S.C. § 503, requiring any and all of DEFENDANTS' infringing products to be impounded and destroyed. PLAINTIFFS are also entitled to the establishment of a constructive trust.

133.    PLAINTIFFS are further entitled to recover their attorney's fees and costs incurred in connection with this matter, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

### Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114

### (Against all Defendants)

134.    PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 133 above as if fully set forth herein.

- 29 -

135.    PLAINTIFFS are the rightful owners of the JRE Registered Marks, *see* Exhibit F, which includes the exclusive rights to use said marks, and any reproduction and imitations thereof, in commerce, such as in the sale, offering for sale, distribution, and/or advertising of goods bearing the JRE Registered Marks.

136.    The DEFENDANTS have infringed, and continue to infringe, PLAINTIFFS' ownership of the JRE Registered Marks by, among other things, selling, offering for sale, distributing, and advertising goods bearing the JRE Registered Marks, and earning significant monies therefrom.

137.    Under the circumstances presented herein, the DEFENDANTS' unauthorized use and exploitation of the JRE Registered Marks in commerce is likely to cause, and upon information already has caused, confusion or mistake, or otherwise deceived consumers and the general public as to the DEFENDANTS' rights in, and association with the JRE Registered Marks, thereby depriving PLAINTIFFS of the value, reputation, and goodwill inherent in such marks.

138.    As a direct and proximate result, PLAINTIFFS are entitled to recover actual damages caused by the DEFENDANTS' violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114, as well as all other remedies provided for in 15 U.S.C. §§ 1114 and 1116 through 1118, which includes but is not limited to the disgorgement of the DEFENDANTS' profits earned through such violations.

139.    The DEFENDANTS acted willfully, deliberately, and with prior notification and knowledge of PLAINTIFFS' ownership of the JRE Registered Marks, or at minimum, in reckless disregard of PLAINTIFFS' ownership rights, entitling PLAINTIFFS, pursuant to 17 U.S.C. § 1117, to recover treble damages and its attorney's fees and costs in connection with this matter. As set forth above, PLAINTIFFS are also entitled to non-economic relief, including declaratory and injunctive relief enjoining the DEFENDANTS from continued violations, and an order requiring any and all of the DEFENDANTS' violating products to be

impounded and destroyed, and further, PLAINTIFFS are entitled to the establishment of a constructive trust.

### THIRD CLAIM FOR RELIEF

### Breach of Contract

### (Against all Defendants)

140.  PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 139 above as if fully set forth herein.

141.  JENNI and CINTAS entered into the 1993, 1995, and 1996 Recording Agreements; three valid contractual agreements.

142.  Pursuant to the agreements, JENNI was obligated to provide CINTAS with a specified number of sounds recording and albums, an obligation JENNI fulfilled.

143.  Despite such, and despite CINTAS earning significant monies from the 1993, 1995, and 1996 Musical Works, CINTAS materially breached the terms of the 1993, 1995, and 1996 Recording Agreements by repeatedly and continuously failing to account and pay royalties owed to PLAINTIFFS (as JENNI's successors-in-interest) in connection with CINTAS' use and exploitation of the 1993, 1995, and 1996 Musical Works.

144.  In addition, CINTAS has earned significant monies from the use and exploitations of JENNI's NIL in connection with the advertising, promotion, and sale of merchandise bearing JENNI's NIL, and have breached the above-referenced agreements by repeatedly and continuously failing to account and pay royalties to PLAINTIFFS (as JENNI's successors-in-interest) in connection therewith.

145.  As a direct and proximate result of CINTAS' breach, PLAINTIFFS have been damaged in an amount to be determined at trial.

146.  Further, as a result of the foregoing acts, PLAINTIFFS are entitled to rescind the 1993, 1995, and 1996 Agreements, as well as the rights granted to, and

by, CINTAS pursuant thereto, and have such rights restored to PLAINTIFFS.

147.    PLAINTIFFS are also entitled to a full accounting of monies earned by CINTAS, and the establishment of a constructive trust, as outlined above.

## FOURTH CLAIM FOR RELIEF

### Violation of California Business and Professions Code § 17200 et seq.

### (Against all Defendants)

148.    PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 147 above as if fully set forth herein.

149.    As outlined herein, the DEFENDANTS, individually and collectively, engaged in unlawful, unfair, and/or fraudulent business practices by, among other things, claiming to own and control rights to JENNI's sound recordings, musical compositions, other musical works, and NIL, rights which the DEFENDANTS were aware, at all times, rightfully belonged to the PLAINTIFFS.

150.    The DEFENDANTS disregarded, and showed a reckless indifference, to PLAINTIFFS and their rights for the purpose, and with the intention, of misleading, creating confusion, and otherwise deceiving consumers and the public as to the DEFENDANTS' rights.

151.    The DEFENDANTS have therefore committed unfair business practices in violation of California Business and Professions Code § 17200 et seq., and in doing so, have caused and continue to cause damages to PLAINTIFFS in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Violation of California Civil Code § 3344.1

### (Against all Defendants)

152.    PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 151 above as if fully set forth herein.

153.    California Civil Code § 3344.1 provides that:

> Any person who uses a deceased personality's name, voice,
> signature, photograph, or likeness, in any manner, on or
> in products, merchandise, or goods, or for purposes of
> advertising or selling, or soliciting purchases of, products,
> merchandise, goods, or services, without the requisite consent
> shall be liable for any damages sustained by the person or
> persons injured as a result thereof.

*See* Cal. Civ. Code § 3344.1

154.    Since JENNI's death in December of 2012, the DEFENDANTS have used and exploited JENNI's NIL for commercial purposes, including through the advertising, promotion, and sale of merchandise bearing JENNI's NIL, and have earned significant monies therefrom.

155.    Despite being granted a limited right to use JENNI's NIL in connection with the advertising, promotion, and sale of the 1993, 1995, and 1996 Musical Works, the DEFENDANTS have used and exploited JENNI's NIL far in excess of the limited rights to which they were granted, and have done and continue to do so without authority from PLAINTIFFS, who, as JENNI's successors-in-interest, are the only persons legally entitled to provide such consent.

156.    As a direct and proximate result, PLAINTIFFS have been damaged, and are therefore entitled to recover the actual damages suffered by them, as well as any profits earned by the DEFENDANTS as a result of such unauthorized uses of JENNI's NIL.

157.    Moreover, PLAINTIFFS are entitled to punitive damages, as well as PLAINTIFFS' attorney's fees and costs in connection with this matter.

**SIXTH CLAIM FOR RELIEF**

**Fraudulent Concealment**

**(Against all Defendants)**

158.    PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 157 above as if fully set forth herein.

159.    The DEFENDANTS have repeatedly and continuously concealed and/or failed to disclose material facts to third parties relating to their ownership and control of rights to JENNI's sound recordings, musical compositions, other musical works, and JENNI's NIL, and further, concealed and/or failed to disclose material facts to PLAINTIFFS relating to DEFENDANTS' earnings from their use and exploitations of JENNI's sound recordings, musical compositions, other musical works, and NIL.

160.    The DEFENDANTS, at all times, had a duty to disclose, and to otherwise not conceal, the above material facts from PLAINTIFFS and other third parties, yet knowingly failed to do so for purposes, and with the intention, of defrauding PLAINTIFFS and other third parties for their own financial benefit.

161.    Had such material facts been disclosed by DEFENDANTS, and/or otherwise not concealed, other third parties would not have entered into agreements with the DEFENDANTS pertaining to said rights and paid monies to DEFENDANTS pursuant to said agreements, and/or would have otherwise acted in a manner different than that in which they did act.

162.    And, had such material facts been disclosed to PLAINTIFFS, and/or otherwise not concealed, PLAINTIFFS would have likewise acted in manner far different than PLAINTIFFS have acted thus far, including acting to protect their rights prior to now.

163.    As a direct and proximate result of DEFENDANTS' fraudulent concealment of material facts, as outlined herein, PLAINTIFFS have been damaged

- 34 -

in an amount to be determined at trial, and DEFENDANTS are liable to PLAINTIFFS for treble damages, as well as PLAINTIFFS' attorney's fees and costs in connection with this matter.

**SEVENTH CLAIM FOR RELIEF**

**Conversion**

**(Against all Defendants)**

164.     PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 163 above as if fully set forth herein.

165.     PLAINTIFFS are the sole and rightful owner of all rights, title, and interest in and to JENNI's sound recordings, musical compositions, other musical works, and NIL, except as expressly provided in the 1993, 1995, and 1996 Recording Agreements, as well as all proceeds stemming therefrom.

166.     As it relates to the rights granted pursuant to the 1993, 1995, 1996, and 2005 Recording Agreements, PLAINTIFFS are the rightful owner of royalties wrongfully retained by DEFENDANTS in connection therewith.

167.     In contravention of PLAINTIFFS' rights, DEFENDANTS took possession of, and have used for their own personal and financial benefit, and/or wrongfully transferred or retained, significant monies from the exploitation of JENNI's sound recordings, musical compositions, other musical works, and NIL.

168.     As a direct and proximate result of DEFENDANTS' use and/or wrongful transfer and retainment of such monies, PLAINTIFFS have been damaged in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**

**Improper Recipient**

**(Against all Defendants)**

169.     PLAINTIFFS repeat and reallege the allegations set forth in paragraphs 1 through 168 above as if fully set forth herein.

- 35 -

170.   Upon information and belief, in connection with the unauthorized and wrongful acts committed by DEFENDANTS, as outlined herein, the DEFENDANTS transferred significant monies to each other, and upon information and belief, to other third parties; monies which rightfully belongs to the PLAINTIFFS.

171.   The individuals and/or entities that received said funds were the improper recipient thereof, and PLAINTIFFS hereby seek relief relating to the improper receipt.

172.   As a direct and proximate result of DEFENDANTS, and upon information and belief, other third parties improper receipt of monies rightfully belonging to PLAINTIFFS, PLAINTIFFS are entitled to equitable relief, including full restitution and/or disgorgement of all benefits received and wrongfully withheld in connection with the foregoing.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for relief as set forth below:

1.   Compensatory and general damages in an amount to be determined  at trial;

2.   Actual damages and profits, or in the alternative, statutory damages;

3.   For damages in an amount to be proven at trial for unjust enrichment;

4.   Punitive and exemplary damages;

5.   Prejudgment interest as provided by law;

6.   Interest upon any judgment entered as provided by law;

7.   Attorney's fees and costs as provided by law;

8.      Rescission of the 1993, 1995, and 1996 Recording Agreements, and all rights granted to, or by, CINTAS pursuant thereto;

9.      A full accounting and restitution;

10.     Injunctive and declaratory relief;

11.     Establishment of a constructive trust; and

12.     Such other and further relief as this Court deems necessary and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial pursuant Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1.

Dated:  September 20, 2023        CRITERION COUNSEL, LAW CORPORATION

By: __/s/_Christopher Q. Pham_____
Christopher Q. Pham, Esq.

*Attorneys for Plaintiffs*

- 37 -