Brady Williamson, Esq. (*admitted pro hac vice*)
Salzano Ettinger Lampert & Wilson, LLP
104 West 40th Street, 14th Floor
New York, NY 10018
Telephone: (212) 375-6746
Facsimile: (646) 365-3119
bwilliamson@selwlaw.com

Christopher Q. Pham, SBN: 206697 (*local counsel*)
    E-mail: cpham@criterioncounsel.com
Criterion Counsel, Law Corporation
6355 Topanga Canyon Blvd., Suite 326
Woodland Hills, CA 91367
Telephone: (818) 888-7540
Facsimile: (818) 888-7544

*Attorneys for Plaintiffs* Jenni Rivera Enterprises, LLC; and The Estate Of Dolores J. Rivera

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNI RIVERA ENTERPRISES, LLC, a California limited liability company; and JACQUELIN CAMPOS, an individual, in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA, the successor-in-interest to the rights of Dolores J. Rivera, professionally known as Jenni Rivera,<br><br>        Plaintiffs,<br><br>        v.<br><br>CINTAS ACUARIO, INC., a California corporation; AYANA MUSICAL, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 2:23-cv-07847 SB (JCx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Hearing**<br><br>Date: **02/09/2024**<br>Time: **8:30 A.M.**<br>Courtroom: **6C** |

- i -

OPPOSITION TO MOTION TO DISMISS

Plaintiffs Jenni Rivera Enterprises, LLC ("JRE") and Jacquelin Campos, an individual ("Campos"), in her capacity as the executrix of the Estate of Dolores J. Rivera (the "Estate")(collectively, the "Plaintiffs"), by and through undersigned counsel, hereby file their opposition to Defendants Cintas Acuario, Inc. ("Cintas") and Ayana Musical, Inc.'s ("Ayana") (collectively, the "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), D.E. 35 (the "Motion"), and in support state as follows:

## I. INTRODUCTION AND RELEVANT FACTUAL ALLEGATIONS

Plaintiffs have satisfied the pleading requirements for tolling the respective statute of limitations on each of Plaintiffs' causes of action under a theory of fraudulent concealment, as well as pursuant to California's discovery rule of accrual. As Defendants note in their Motion, "the Court was clear that 'the main issue … is whether the claims are time-barred.'"[1] Motion at p. 1. (emphasis removed). Plaintiffs' claims are not time-barred however because Plaintiffs' factual allegations are sufficient, at least at the pleading stage, to support tolling the statute of limitations under two separate tolling doctrines.

Acknowledging that the allegations in Plaintiffs' original complaint certainly "raise[] the possibility of fraudulent concealment," the Court instructed the Plaintiffs to (1) set forth additional facts pertaining to "specific misrepresentations, when they were made, what was concealed, or how any concealment thwarted Plaintiffs' discovery of the misconduct" and (2) provide further clarity regarding "why, at any point since" Jenni's death in 2012, "someone

---

[1] The reason the statute of limitations is "the main issue" before the Court on Defendants' Motion, is because, as the Court previously noted, both the one year contractual limitations period Defendants' attempt to rely on, as well as the statutory limitation periods on Plaintiffs' other causes of action—ranging from two to four years—"rise and fall," at this stage, on whether a tolling doctrine is applicable here." *See* D.E. 32 (the "Court's Order") at p. 2, note 4.

- 1 -

OPPOSITION TO MOTION TO DISMISS

else involved in or interested in the estate as her successor-in-interest (or JRE, which administers Rivera's rights on behalf of the estate)"—"besides Rosie and Juan who have a clear conflict of interest"—"could not have discovered the alleged violations in the exercise of reasonable diligence." Court's Order at pp. 5-7. The Court further explained that the "latter deficiency," i.e., the issue of reasonable diligence, "also doom[ed]" Plaintiffs' "reliance on the discovery rule." *Id.* at p. 8.

The crux of this Opposition is whether the factual allegations in Plaintiffs' FAC satisfy the reasonable diligence component of the tolling doctrines. This Court previously discussed the proper framework for assessing the reasonable diligence component *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 782 F. Supp. 487, 497–98 (C.D. Cal. 1991)(denying summary judgment and stating that "because … there is a genuine issue of material fact whether the facts publicly available were sufficient to excite plaintiffs' inquiry, then no due diligence need be demonstrated for plaintiffs to survive summary judgment.")(internal citations omitted). The *In re Coordinated Pretrial Proc.* Court explained that "[p]laintiffs are not under a duty to continually scout around to uncover claims which they have no reason to suspect they might have." *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 782 F. Supp. 487 at 498. Relying on Ninth Circuit precedent, the Court clarified that "[d]ue diligence is not required in the abstract," and consequently, "[t]he requirement of diligence is only meaningful … when facts exist that would excite the inquiry of a reasonable person." *Id.* at 497-98 (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988)).

Accordingly, because Plaintiffs allege that they had no reason at all to suspect that Plaintiffs were being harmed from in or around December of 2012 until in or around January of 2022, then Plaintiffs need only plead facts to show that they acted reasonably diligent subsequent to January of 2022, which Plaintiffs have.

Plaintiffs' First Amended Complaint, D.E. 33 (the "FAC"), sets forth additional facts relating to the scheme concocted by Defendants' current officers

and/or directors "shortly after Jenni's death in or around December of 2012," including, among other things, specific factual allegations concerning Defendants' affirmative acts and intentional misrepresentations, through which Defendants—in concert with Plaintiffs' prior officers and/or directors—concealed Defendants' wrongful conduct from Plaintiffs. *See e.g.,* FAC at ¶¶ 118, 125-30. Moreover, the FAC provides ample factual support regarding how the "scheme was successfully carried out and concealed from Plaintiffs … until in or around January of 2022," which was the first time Campos or any of Plaintiffs' other beneficiaries—"Jenni's four youngest children" ("Plaintiffs' Beneficiaries")—despite acting reasonably prudent under the circumstances in the ten years since Jenni's tragic passing, "obtained any information at all or reviewed any documents that would have alerted them to the fact that Plaintiffs were being harmed, let alone the manner and extent of the harm." *See* FAC at ¶¶ 3, 131, 140.

The Court also instructed Plaintiffs to assert factual allegations clarifying how others involved or interested in the Estate or JRE—aside from Jenni' sister Rosie Rivera Flores ("Rosie"), and her brother Juan Rivera ("Juan")—could not have discovered Defendants' misconduct prior to in or around January of 2022. *See* Court's Order at p. 6. Plaintiffs have done so sufficiently.

Specifically, Plaintiffs allege that following Jenni's death in December of 2012, Rosie and Juan took control of Jenni Rivera Enterprises, Inc., which Jenni "formed on or about January 30, 2007" to carry out "virtually identical functions to those of JRE presently"; and then "[i]n furtherance of the[ir] scheme … formed JRE, dissolved Jenni Rivera Enterprises, Inc., and dismissed essentially all of the former employees of Jenni Rivera Enterprises, Inc. to ensure that no individuals with allegiances to Jenni—and thus [Plaintiffs'] Beneficiaries—remained on staff." FAC at ¶¶ 16, 124. After forming JRE, "all of Jenni's existing rights in her music and other works, including those she chose to assign or otherwise transfer to Jenni Rivera Enterprises, Inc. during her lifetime," were transferred by Rosie and/or Juan

to JRE, and thus "became the property of JRE, which Rosie and Juan owned and controlled from its creation until" in or around December of 2021, when they resigned from those positions. *Id.* at ¶ 16. Rosie and Juan also replaced essentially all of the former employees of Jenni Rivera Enterprises, Inc., and added an additional layer of protection to "the henhouse" (*see* Court' Order at p. 5) by hiring "employees and representatives" to work for JRE (and also the Estate), who were "either directly involved in the scheme or willingly turned a blind eye to it." FAC at ¶¶ 124, 140.

Moreover, "in or around early 2013," before transferring Jenni and Jenni Rivera Enterprises, LLC's existing rights and property to JRE, and formally dissolving Jenni Rivera Enterprises, Inc., "Pedro, Rosie, and/or Juan [directed] an attorney named Gerald B. Weiner" to draft a letter "on behalf of Cintas, Ayana, and Jenni Rivera Enterprises, Inc. stating, in sum and substance, that Defendants owned and controlled 100% of the rights in Jenni's music and other works, and had an unencumbered right to use and exploit Jenni's" name, image, and likeness. *Id.* at ¶ 25. Rosie and Juan blatantly disregarded the duties they owed to Plaintiffs, as "Rosie and Juan knew of the letter" and knew it contained false claims, yet never objected, thereby permitting Defendants to "distribute[] the letter to music companies and vendors worldwide … beginning in or around December 2012 for purposes of inducing third parties to enter into agreement with Cintas and Ayana relative to Jenni's music and other works." *Id.* at ¶ 126-27. Defendants took additional steps "[f]or the purpose of covering their tracks, in or around November of 2016," by issuing "an accounting statement and letter to" JRE, which "contained false information and misrepresentations"; namely, that JRE owed Defendants "approximately $35,000" in royalties "due to certain actions" Defendants alleged Jenni had taken "years prior." *Id.* at ¶ 129-30. Fabiola Ávalos, "who worked in the royalty department for Cintas and Ayana for almost twenty (20) years," drafted and issued the fabricated accounting statement and letter to JRE, "at Pedro's direction."

- 4 -
OPPOSITION TO MOTION TO DISMISS

Through the aforementioned actions, among many others, Defendants' current officers and/or directors ensured that Plaintiffs' Beneficiaries "were not alerted to the scheme." *Id.* at ¶ 121. In fact, they were able to successfully prevent Plaintiffs' Beneficiaries, as well as any other individuals "involved in or interested in" JRE and the Estate, from having any reason to suspect that Plaintiffs were being harmed "from in or around December of 2012 until in or around January of 2022." *Id.*; Court' Order at p. 7. During those ten years, Rosie and Juan—Plaintiffs' officers and directors, purposefully allowed "Cintas and Ayana to seize control of 100% of Jenni's rights … shirk its obligations to Plaintiffs, and otherwise assert to third parties that it owned and controlled rights which lawfully belonged to Plaintiffs" without make any objection whatsoever. FAC at ¶¶ 118, 127-28.

Plaintiffs' contend that applying these factual allegations, viewed in the light most favorable to Plaintiffs, to the legal precedent above definitively resolves one of the major issues previously raised by the Court, and likewise, undercuts a number of similar arguments raised by the Defendants. In particular, Defendants' contention that "Plaintiffs … failed to set forth any facts to address why – in the more than ten years since this supposed "scheme" was concocted – Plaintiffs did not demand royalty statements that they allege Defendants failed to produce "since in or around December of 2012." Motion at p. 1. In addition to facts provided above, the FAC also includes the following allegations: (i) in or around December of 2012, "Cintas and Ayana … ceased rendering complete and accurate accounting statements and remitting royalty payments to Plaintiffs as required by the 1993, 1995, and 1996 Recording Agreements" between Cintas and Jenni; (ii) Rosie and Juan were fully aware that Defendants' failure to do so constituted a breach of Defendants' obligations 1993, 1995, and 1996 Recording Agreement; yet (iii) "no objection was ever made by either Rosie and/or Juan" because despite being officers and/or directors of JRE, Rosie and Juan "were actively involved in" and benefitted from "the scheme." *See* FAC at ¶¶ 120, 125-30. Actually, Plaintiffs are

informed and believe that one of the driving factors behind the scheme's creation was "a secret agreement … reached in or around December of 2012 whereby Rosie and Juan were promised that they would assume ownership and control over Cintas and Ayana once Pedro eventually decided to step down." *Id*. at ¶ 119. Notably, almost immediately "after resigning from their positions with JRE" and the Estate "in or around December of 2021," Rosie and Juan both "took on an active role in the daily management and operations of Cintas and Ayana," and "are currently officers and/or directors of Cintas and Ayana." *Id.* at ¶¶ 20.

After Jenni' death in December of 2012, Defendants' current officers and/or directors—Pedro, Rosie, and Juan—"knew that the only other individuals with any authority to object to Defendants' wrongful acts" were Plaintiffs' Beneficiaries, who Juan described to Rosie and Pedro "[d]uring one conversation at Cintas' headquarters in or around early 2013," as "only stupid children who would never know enough about the music and entertainment business, or about what had actually transpired during Jenni's lifetime, to discover the scheme." *Id.* at ¶ 122. Likewise, Pedro, Rosie, and Juan knew "that the only entities with authority" to object to the scheme were "JRE and the Estate," both of which Rosie and Juan maintained sole ownership and control over from "[a]fter Jenni's death in December of 2012" until resigning in or around December of 2021. *Id.* at ¶¶ 4-5, 120.

In reality, at the time of Jenni's death, Plaintiffs' Beneficiaries were 23-years-old (Campos); 21-years-old (Jenika Lopez); 15-years-old (Trinidad Marin); and 11-years-old (Juan Lopez ("Johnny")). *Id.* at ¶ 15. And, Juan was correct in at least one regard, because in addition to being "young and coping with a traumatic, life altering loss," none of Plaintiffs' Beneficiaries had "prior experience in the music and entertainment business." *Id.* at ¶¶ 116, 120. As such, Plaintiffs' Beneficiaries acted prudently in following their family members instructions, and deciding to "leave the management and control of Jenni's music and other business

1  ventures" to their grandfather, aunt, and uncle. *Id.* at ¶ 116. Plaintiffs' Beneficiaries
2  "reasonably placed their trust in their immediate family," and reasonably believed
3  that they "would act in the[] best interest [and] maximize earning potential for the
4  benefit of Plaintiffs, and ultimately the benefit of [Plaintiffs'] Beneficiaries. *Id.* At
5  ¶116-17. Unfortunately for Plaintiffs and Plaintiffs' Beneficiaries, their trust in
6  those particular family members, and the reasonable belief that those family
7  members were acting in the best interest of JRE and the Estate, remained intact
8  "from in or around December of 2012 until in or around January of 2022 when
9  Campos replaced Rosie as the CEO of JRE, the executrix of the Estate, and the
10 trustee of the" Dolores J. Rivera Living Trust (the "Trust"). *Id.* at ¶ 9. "Around the
11 same time," in or around January of 2022, Plaintiffs' Beneficiaries also "received
12 the results of an audit" that an interested Juan Lopez ("Johnny"), who was still only
13 twenty years old, had requested of the Juan Lopez Irrevocable Trust—one of the
14 four subtrusts of the trust. Id. at ¶ 118.

15      Upon receiving the "results of the audit," and engaging in internal
16 discussions regarding certain "other circumstances surrounding Rosie and Juan's
17 departure from their positions," Plaintiffs, for the first time, had reason to suspect
18 that Plaintiffs' had been harmed. *Id.* at ¶¶ 134-36. Significantly, Plaintiffs thereafter
19 acted with reasonable diligence by initiating an investigation, which ultimately
20 "revealed that their family member had utilized their positions as officers and/or
21 directors of Cintas, Ayana, and JRE, as part of a scheme concocted after Jenni's
22 death, through which Cintas and Ayana would become enriched at Plaintiffs'
23 expenses." *Id.* at ¶ 137. Plaintiffs then notified Defendants, in writing, that
24 Plaintiffs had become aware of Defendants' wrongful acts. *Id.* at ¶ 95. Despite
25 initially engaging, Defendants have, to this day, neither cured or attempted to cure
26 the harm caused by their wrongful acts, nor have Defendants "acknowledged
27 Plaintiffs' rights in any way." *Id*. at ¶ 96. Plaintiffs then initated the instant action
28 on August 18, 2023. *See* D.E. 1.

Simply put, Plaintiffs complied with the instructions expressly provided by this Court, cured any and all pleading defects, and by doing so have satisfied the applicable pleading standards for tolling the statute of limitation governing Plaintiffs' claims. Because two separate tolling doctrines are applicable to Plaintiffs' claim, and "[b]ecause both the contractual" limitation periods which Defendants seek to rely on, and the applicable "statutory limitation periods rise and fall on whether a tolling doctrine is applicable here," *see* Court's Order at p. 4, Defendants' Motion must be denied in its entirety.

## II. LEGAL STANDARD

A complaint must simply allege sufficient facts "to state a claim for relief that is plausible on its face." *Mitchell Rubber Prod., LLC v. Verlan Fire Ins. Co.*, No. EDCV211845JGBKKX, 2022 WL 17222233, at *1 (C.D. Cal. Aug. 12, 2022)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant." *Farrell v. Boeing Emps. Credit Union*, No. 16-CV-02711 NC, 2016 WL 6093239, at *1 (N.D. Cal. Oct. 19, 2016)(citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)). "The Ninth Circuit has held that a 'claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitation only when the running of the statute is apparent on the face of the complaint.'" *Williams v. Just*, No. 215CV2143WBSCKDP, 2016 WL 740531, at *2 (E.D. Cal. Feb. 25, 2016)(quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010))(internal citations omitted).

## III. ARGUMENT

### A. Plaintiffs' Claims Are Not Barred By the Statute of Limitations

While the statute of limitations "stimulates plaintiffs to pursue their claims diligently … a countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds." *Fox v. Ethicon Endo-*

- 8 -
OPPOSITION TO MOTION TO DISMISS

1  *Surgery, Inc.*, 110 P.3d 914, 919–20 (Cal. 2005). There is also "an underlying
2  notion that plaintiffs should not suffer where circumstances prevent them from
3  knowing they have been harmed," which is often "accompanied by the corollary
4  notion that defendants should not be allowed to knowingly profit from their
5  injuree's ignorance." *Parsons v. Tickner*, 37 Cal. Rptr. 2d 810, 817 (1995)(quoting
6  *Apr. Enterprises, Inc. v. KTTV*, 195 Cal. Rptr. 421)). Based on the above rationale,
7  federal and state courts in California and across the country have established
8  exceptions to the general rule governing the accrual of claims.

9        Two of those exceptions are applicable here: (1) the fraudulent concealment
10 doctrine, which is designed "to prevent a defendant from 'concealing a fraud …
11 until such a time as the party committing the fraud could plead the statute of
12 limitations to protect it," *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D.
13 Cal. 2015)(quoting *Bailey v. Glover*, 88 U.S. 342, 349 (1874)), and (2) the
14 discovery rule, "which postpones accrual of a cause of action until the plaintiff
15 discovers, or has reason to discover, the cause of action," *Fox v. Ethicon Endo-*
16 *Surgery, Inc.*, 110 P.3d 914 at 920 (internal citations omitted). To succeed at the
17 dismissal stage, under either tolling theory, a plaintiff's complaint must have
18 sufficient factual allegations which, when taken as true and viewed in the light most
19 favorable to the plaintiff, satisfy the pleading standard established with regard to
20 each. *See*, *e.g.*, *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 at 885 (citing *Conmar*
21 *Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.1988)); *see also*
22 *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010)(internal
23 citations omitted). The applicability of an equitable tolling doctrine "generally
24 'depends on matter outside the pleadings, so it is rarely appropriate to grant a
25 12(b)(6) motion to dismiss.'" *Urbano v. Bank of Am., N.A.*, No. 1:12-CV-00464
26 AWI, 2012 WL 2934154, at *5 (E.D. Cal. July 18, 2012)(quoting *Huynh v. Chase*
27 *Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir.2006)).

28

The instant case is not one of the rare occasions where dismissal is appropriate. Here, the factual allegations in Plaintiffs' FAC satisfied the pleading standards required to invoke both the fraudulent concealment doctrine and the discovery rule. Because Plaintiffs can rely on those doctrines to toll the statute of limitations on Plaintiffs' causes of action, none of Plaintiffs' claims can be deemed time-barred at this juncture.

**1. Plaintiffs Satisfied the Pleading Standards of the Fraudulent Concealment Doctrine**

"Under the equitable doctrine of fraudulent concealment, the applicable statute of limitations is tolled 'if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence.'" *In re Coordinated Pretrial Proc.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991)(quoting *E.W. French & Sons, Inc. v. General Portland Inc.,* 885 F.2d 1392, 1399 (9th Cir.1989)); *see also Ryan*, 147 F. Supp. 3d 868 at 885 (quoting *Hexcel Corp. v. Ieonos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)). To sufficiently plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative steps to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Id.* (internal citations omitted).

*First*, Plaintiffs must allege that their "failure to have notice … was the result of affirmative conduct by the defendant." *See e.g.*, *In re Coordinated Pretrial Proc.*, 782 F. Supp. 487,at 489 ("[a] reasonable jury could find" that the companies' executives "establishing [a] network" to "surreptitiously … contact each other about pricing … was an affirmative act"); *see also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d at 505 ("[a] jury could believe that the filing of false customs forms was affirmative conduct which prevented [plaintiff] from being alerted to the manipulation of … prices."). Passive concealment of information can also be

- 10 -

OPPOSITION TO MOTION TO DISMISS

sufficient, but only when "the defendant has a fiduciary duty to disclose the information to the plaintiff." Without waiving any rights, for the sake of the instant motion, Plaintiffs will rely on their allegations pertaining to Defendants' affirmative acts, which included "assert[ing] to … third parties that [Defendants'] owned and controlled right which lawfully belonged to Plaintiffs." FAC at ¶ 118.

In *Parsons v. Tickner*, *supra*, the California Supreme Court overturned the lower court's dismissal on statute of limitations grounds in part because, similar to case here, the plaintiff in the lower court alleged that the defendant "represented themselves as the producer of the Wait and See catalog," which the *Parsons* Court recognized as "[o]bviously" constituting "affirmative conduct." *Parsons*, at 817. Defendants here however went even further by obtaining and distributing a letter "to music companies and vendor worldwide," which falsely stated, in sum and substance, that Defendants "owned and controlled 100% of the rights in Jenni's music and other works, and had an unencumbered right to use and exploit Jenni's" name, image, and likeness. *See* FAC at ¶ 25.

***Second***, Plaintiffs must allege that Plaintiffs did not have actual or constructive knowledge of the facts giving rise to its claim. "Constructive knowledge exist when a plaintiff 'should have been alerted to facts that, following due diligent inquiry, could have advised it of it claim.'" *In re Coordinated Pretrial Proc.*, at 492 (quoting *Conmar*, at 502). Plaintiffs satisfied this second element by alleging that the Defendant' "scheme was successfully carried out and concealed from Plaintiffs … until in or around January of 2022," which was the first time Campos or any of Plaintiffs' other beneficiaries—"Jenni's four youngest children" ("Plaintiffs' Beneficiaries")—despite acting reasonably prudent under the circumstances in the ten years since Jenni's tragic passing, "obtained any information at all or reviewed any documents that would have alerted them to the fact that Plaintiffs were being harmed, let alone the manner and extent of the harm." *See* FAC at ¶¶ 3, 131, 140. And further, that as part of the scheme, Rosie and Juan,

on behalf of Jenni Rivera Enterprises, Inc., "dismissed essentially all of the former employees of Jenni Rivera Enterprises, Inc. to ensure that no individuals with allegiances to Jenni—and thus [Plaintiffs'] Beneficiaries—remained on staff," and replaced them with "employees and representatives," who were "either directly involved in the scheme or willingly turned a blind eye to it." FAC at ¶¶ 124, 140.

As a result, Plaintiffs' Beneficiaries, as well as the other individuals involved in or interested in JRE and the Estate, who were not directly involved in the scheme, from having any reason to suspect that Plaintiffs were being harmed "from in or around December of 2012 until in or around January of 2022." *Id.* at ¶ 121.

***Lastly***, Plaintiffs must allege that they acted diligently in trying to uncover the facts giving rise to its claim. The Ninth Circuit explained in *Conmar*, *supra* that the "requirement of diligence is only meaningful … when facts exist that would excited the inquiry of a reasonable person." *Conmar*, at 504. In other words, "Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they have." *In re Coordinated Pretrial Proc.*, at 497-98. Misinterpreting the applicable law, Defendants contend that "Plaintiffs' allegations still do not address their complete lack of diligence in discovering Defendants wrongdoing earlier than 2022." Motion at p. 9. Plaintiffs' FAC not only contains numerous allegations regarding who was involved in the scheme, why and when it was concocted, what was concealed, and how long it lasted, but also contains allegations regarding Plaintiffs' acting reasonably diligent upon receiving the "results of the audit," and engaging in internal discussions regarding certain "other circumstances surrounding Rosie and Juan's departure from their positions," which combined gave Plaintiffs reason to suspect they were being harmed for the first time. *See* FAC at ¶¶ 134-36.

Plaintiffs have pled sufficient facts at this stage to invoke the fraudulent concealment doctrine for purposes of tolling the statute of limitations.

**2. Plaintiffs Satisfied the Pleading Standards of the Discovery Rule**

"[T]o invoke the delayed discovery exception to the statute of limitations, the plaintiffs must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F. Supp.2d at 1130 (internal citation omitted).

Plaintiffs have undoubtedly satisfied the first element. With regard to the second element, the *Apr. Enterprises, Inc.* Court addressed "the ultimate question … whether appellant exercised reasonable diligence in discovering respondents' erasure of the tapes" at issue, held that the "plaintiff's burden [is] to establish "facts showing that he was not negligent in failing to make the discovery sooner." *Apr. Enterprises, Inc.* at 421 (quoting *Hobart v. Hobart Estate Co.*, 159 P.2d 958 at 972). Under the circumstances alleged in the FAC, Plaintiffs, like the plaintiff in *Apr. Enterprises, Inc.*, "had no reason to suspect or opportunity to discover the factual basis for their claims." *Wolf v. Mason-McDuffie Real Est., Inc.*, No. 22-CV-00627-MMC, 2022 WL 4126273, at *2 (N.D. Cal. Sept. 9, 2022)(citing *Apr. Enterprises, Inc.*, at 827); *see also In re Coordinated Pretrial Proc.*, at 493 (citing *Conmar*, at 504)("public access to information does not incontrovertibly establish constructive knowledge of one's claims … [and] [e]ven where a plaintiff actually knows of public speculation, constructive knowledge cannot be established absent awareness of some evidence tending to support it."). This case closely resembles *Parsons*, in which the Court found the discovery rule adequately pled where plaintiff alleged that she "was not in possession of any books of the company or other sources that would would have reasonably revealed" the defendant's wrongful conduct. *Parsons*, at 1527.

In short, Plaintiffs' claims are not time-barred because Plaintiffs' factual allegations are sufficient, at least at the pleading stage, to support tolling the statute of limitations on each of their causes of action under theory of fraudulent

- 13 -
OPPOSITION TO MOTION TO DISMISS

1  concealment, as well as pursuant to California's discovery rule of accrual.

2  **B. Plaintiffs' Claims Are Not Barred By the 1993-1996 Recording
3  Agreements**

4  Despite Defendants' insistence, all of Plaintiffs' causes of action are, indisputably, **not** "fundamentally (and fatally) premised on the argument that the rights Defendants possessed in the Works and/or Rivera's NIL rights, by way of the parties' execution of the Recording Agreements, were rescinded when Defendants allegedly breached such Agreements by failing to pay royalties." Motion at p. 3 (emphasis added). Plaintiffs' sole cause of action which is "fundamentally premised" on Defendants' failure to render accounting statements and remit royalty payments is Plaintiffs' Third Claim for Relief, breach of contract. Notwithstanding, this Court has already noted that "Defendants have not shown that the parties intended to exclude tolling principles when considering the contractual limitation." Court's Order at p. 4, n. 4. Regardless of Defendants' flawed interpretation of the terms of the 1993, 1995, and 1996 Recording Agreement, "both the contractual and statutory limitation periods"—in essence, Defendants' entire Motion—"rise and fall on whether a tolling doctrine is applicable here." *Id.*

For the reasons outlined in depth above, there are two separate tolling doctrines applicable to Plaintiffs' claims, including Plaintiffs' breach of contract claim. As such, Defendants' Motion should be denied.

**C. Plaintiffs' Fraudulent Concealment Claim is Adequately Pled**

As discussed in depth above, Plaintiffs adequately pled their fraudulent concealment claim. Plaintiffs will therefore rely, for the most part, on the same argument set forth in section III(A)(1) above. *See* Section III(A)(1), *sup*ra.

Plaintiffs however will directly address Defendants' argument that "Plaintiffs' FAC continues to fail to include sufficient specificity regarding the 'what', 'why', and/or 'how' of Defendants' alleged misconduct." Motion at p. 8.

- 14 -
OPPOSITION TO MOTION TO DISMISS

More specifically, Defendants claim that Plaintiffs "do not provide any description of the specific misrepresentations, when they were made, what was concealed, or how any such concealment thwarted Plaintiffs' earlier discovery of Defendants' alleged misconduct." *Id.* Defendants seemingly ignore a significant number of the factual allegations in the FAC, including for example, (1) the letter drafted "in or around early 2013" by Gerald B. Weiner, which falsely represented, in sum and substance, that Defendants owned and controlled 100% of the rights in Jenni's music and other works, and had an unencumbered right to use and exploit Jenni's" name, image, and likeness" and (2) the "fabricated ... accounting statement and letter," drafted and issued by former Cintas and Ayana employee Fabiola Ávalos "in or around November of 2016 … at Pedro's direction, which "contained false information and misrepresentations"; namely, that JRE owed Defendants "approximately $35,000" in royalties "due to certain actions" Defendants alleged Jenni had taken "years prior." *Id.* at ¶¶ 25, 129-30.

Through the above acts, and the maneuverings relating to the dissolution of Jenni Rivera Enterprises, Inc. and formation of JRE, including the dismissal of "essentially all of the former employees of Jenni Rivera Enterprises, Inc. to ensure that no individuals with allegiances to Jenni," Defendants' current officers and/or directors were able to conceal their scheme and Defendants' wrongful conduct from Plaintiffs' Beneficiaries, as well as any other individuals "involved in or interested in" JRE and the Estate—aside from Rosie and Juan—from having any reason to suspect that Plaintiffs were being harmed "from in or around December of 2012 until in or around January of 2022." *Id.* at ¶ 121. As a result, Defendants were "enriched at Plaintiffs' expense." *Id.*

### D. The Court Cannot Judicially Notice the Contents of the Press Release

In support of their Motion, Defendants have requested that that Court take judicial notice of a January 4, 2022 press release "issued by Defendants" (Dkt. 35-1 at Page 2 of 14, Line 6) and published on the Internet on an undiscernible date on

1. Telemundo's website at https://www.telemundo.com. In support, Defendants have filed documents, written in English, along with a Declaration and Certification of Translation signed by Diana V. Valori, an Accredited Translator registered with the American Translators Association, attesting to the fact that the attached English documents are a true and accurate translation of Spanish language documents that have not been filed with the Court.

The court may only judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The rule governs judicial notice of adjudicative, rather than legislative facts. Fed. R. Evid. 201(a). Even when a court takes judicial notice of a party's exhibits, the findings and statements within those documents frequently contain facts that may be disputed and conclusions that involve interpretation, opinion, and judgment. *In re Easysaver Rewards Litigation*, 737 F. Supp. 2d 1159, 1171 (S.D. Cal. 2010). Here, both the press release and news article forming the basis of Defendants' request reflect statements that contain facts that are disputed and conclusions that involve interpretation, opinion, and judgment. The contents of both documents are not facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. While the Court might take notice of such documents to "indicate what was in the public realm at the time," it cannot take notice of their contents as being true. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015). And, given Defendants' failure to include the Spanish language originals with its translations, notice of any facts therein on the grounds that they are generally known within the court's territorial jurisdiction should be declined. Moreover, given Defendants admission within their request for judicial notice that the press release was, in fact, issued by them, it would make little sense for this Court to afford the contents much weight; especially when the

Spanish version is entirely absent from the record.

Accordingly, Plaintiffs respectfully request that this Court deny Plaintiffs request for judicial notice and decline to take judicial notice of any facts contained within the material submitted.

### E. Leave to Amend Should Be Granted, If Dismissed

FRCP 15 states that leave to amend "shall be freely given when justice so requires," and the Ninth Circuit has held that "'this policy is to be applied with extreme liberality,'" unless the Complaint "could not possibly be cured by allegation of other facts." *Mitchell Rubber Prod., LLC v. Verlan Fire Ins. Co.*, No. EDCV211845JGBKKX, 2022 WL 17222233, at *2 (internal citations omitted).

As alleged in the FAC, Plaintiffs' investigation into this matter is ongoing, and Plaintiffs are steadfastly gathering additional relevant facts pertaining to what exactly occurred from in or around December of 2012 until in or around January of 2022. In the event this Court intends to dismiss Plaintiffs' Complaint, Plaintiffs would simply ask this Court to permit Plaintiffs to present facts not previously able to be pled, which could warrant leave to amend.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss should be denied in its entirety. In the event this Court dismisses Plaintiffs' Complaint, Plaintiffs should be afforded leave to amend.

DATED: January 19, 2023       Salzano Ettinger Lamper & Wilson, LLP

By: __/s/ Brady Williamson_____
        Brady Williamson

Criterion Counsel, Law Corporation

By: __/s/ Christopher Q. Pham_____
        Christopher Q. Pham, Esq. (*local counsel*)

*Attorneys for Plaintiffs*

OPPOSITION TO MOTION TO DISMISS

1 | Jenni Rivera Enterprises, LLC; and
  | The Estate Of Dolores J. Rivera

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -
OPPOSITION TO MOTION TO DISMISS