John M. Begakis, Esq. (SBN 278681)
john@altviewlawgroup.com
**ALTVIEW LAW GROUP, LLP**
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

*Attorneys for Defendants* CINTAS ACUARIO,
INC., a California corporation, and AYANA
MUSICAL, INC., a California corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNI RIVERA ENTERPRISES, LLC, a California limited liability company; and JAQUELIN CAMPOS, an individual, in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA, the successor-in-interest to the rights of Dolores J. Rivera, professionally known as Jenni Rivera, <br><br> Plaintiff, <br><br> v. <br><br> CINTAS ACUARIO, INC., a California corporation; AYANA MUSICAL, INC., a California corporation; and DOES 1 through 10, inclusive, <br><br> Defendant. | CASE NO: 2:23-cv-07847-SB-JC <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **Hearing** <br> Date: February 2, 2024 <br> Time: 8:30 a.m. <br> Courtroom: 6C <br><br> Action Filed: September 20, 2023 <br> Trial Date: November 12, 2024 |

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants CINTAS ACUARIO, INC., a California corporation ("Cintas"), and AYANA MUSICAL, INC., a California corporation ("Ayana") (collectively, "Defendants"), hereby submit this Reply in support of their Motion to Dismiss the First Amended Complaint (the "FAC") filed by Plaintiffs JENNI RIVERA ENTERPRISES, LLC, a California limited liability company ("JRE"), and JAQUELIN CAMPOS, an individual ("Campos"), in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA (the "Estate"), the successor-in-interest to the rights of Dolores J. Rivera, professionally known as Jenni Rivera (collectively, "Plaintiffs") on December 22, 2023 (the "Motion").

## I. EACH AND EVERY ONE OF PLAINTIFFS' CLAIMS ARE BARRED BY APPLICABLE STATUTORY LIMITATIONS PERIODS

### A. Plaintiff Has Not Established All Of The Elements Necessary To Prove Fraudulent Concealment

*First*, Plaintiffs argue that Defendants allegedly took "affirmative steps" to conceal their "scheme" by: (1) having Juan and Rosie reorganize the corporate structure of Plaintiff JRE (Opposition at 3:19-4:8); (2) having Juan and Rosie engage Plaintiff JRE's then-current counsel to draft a letter *to a third party* allegedly stating "in sum and substance" that Defendants owned and control all rights in the works at issue (Opposition at 4:9-21); and (3) issuing an accounting statement to JRE, which asserted that *JRE* owed *Defendants* royalties as a result of Defendants' ownership of the works at issue (Opposition at 4:21-28).

Plaintiffs' first new contention is that, in essence, Juan and Rosie's formation of a new business entity (which the beneficiaries still owned) and transfer of all rights from the old entity to the new entity amounted to some sort of nefarious act of concealment. Plaintiffs can dress up this benign corporate restructuring to make it look like Juan and Rosie engaged in some sort of corporate "shell game," but one need only scratch the surface of this claim to see its obvious flaws – namely, that all

1

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Juan and Rosie did was set up a new entity to replace the old one, with all else remaining the same. Furthermore, Plaintiffs claim that Juan and Rosie "replaced all of the former employees" as a further act of concealing their "scheme" – but this allegation changes nothing because Juan and Rosie were still in control of JRE.

Plaintiffs' second new contention is that Juan and Rosie engaged JRE's attorney to draft and send a letter allegedly containing misrepresentations, and Plaintiffs compare such actions to the actions of the defendants in *Parsons v. Tickner*, 37 Cal. Rptr. 2d 810, 817 (1995) who actively concealed information by misrepresenting their status as producers *to the plaintiffs in that case*. In this case, however, the alleged misrepresentation was supposedly made 'to music companies and vendors worldwide…'" Thus, this alleged "affirmative step" could not have been sufficient to establish concealment of vital facts because it was not even directed towards Plaintiffs.

Plaintiffs' third, and final, new contention is that Defendants' issuance of a royalty statement, which claimed Plaintiffs owed Defendants royalties from overpayments, amounted to an "affirmative step" to conceal Defendants' "scheme". But Plaintiffs do not allege that this was an act of Juan and Rosie from within JRE – this was an outside communication to JRE from Defendants, and therefore could not have been some sort of nefarious act of concealment worked by Juan and Rosie from within JRE. Moreover, the statement was not an act that prevented Plaintiffs or their beneficiaries from discovering that Defendants had allegedly failed to pay royalties for years – it was an outright admission by Defendants of their position, in this case, as to whether they owed royalties to Plaintiffs.

**Second**, Plaintiffs argue that neither Plaintiffs nor their beneficiaries could have had actual or constructive knowledge of Defendants' alleged "scheme" because they did not receive any information or documents that would have alerted them, and because all of the employees were hired by Juan and Rosie to either advance the "scheme" or "willingly turn[] a blind eye to it." (Opposition at 11:16-

12:5). Of course, the absence of any royalties or royalty statements for ten years *in and of itself* should amount to constructive knowledge that something was afoot – and the fact that the beneficiaries, particularly the ones who were adults at the time, did nothing is telling. Furthermore, and as mentioned above, it makes no difference if one or all of the employees were "in on it" with Juan and Rosie – because Juan and Rosie were supposedly in charge of JRE, and it therefore would not matter what everyone else did to advance the "scheme" as long as Juan and Rosie themselves were advancing it (which Defendants vehemently deny).

*Third*, Plaintiffs argue that they were not obligated to do anything more to act diligently in trying to uncover the facts giving rise to the alleged "scheme" because no facts existed that would "excite" the inquiry of a reasonable person. (Opposition at 12:10-25). Surely the change of Plaintiff JRE's corporate structure, and the alleged replacement of "essentially all of the former employees" thereof (Opposition at 4:3-4), would "excite" inquiry from a reasonable person – particularly given that it allegedly occurred shortly after Rosie and Juan took over (*see* Opposition at 4:9-10). But, if the Court finds that this fact would not "excite" inquiry from a reasonable person, Plaintiffs' alleged receipt *in 2016* of a "fabricated" accounting stating that *Plaintiffs* owed *Defendants* "approximately $35,000" must.

Accordingly, Plaintiffs' inexplicable failure to engage in literally *any* inquiry – much less a diligent one – in ten years precludes Plaintiffs from sufficiently alleging fraudulent concealment, and the FAC must, therefore, be dismissed on the basis that all relevant statutes of limitations cannot be tolled.

## B. <u>Plaintiff Has Not Established All Of The Elements Necessary To Satisfy The Delayed Discovery Rule</u>

Plaintiffs summarily state that they have satisfied the delayed discovery rule's "time and manner of discovery" element – but Plaintiffs have failed to allege any details regarding their supposed discovery of wrongdoing to serve the first element's purpose of "afford[ing] the court a means of determining whether or not the

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know before." *E-Fab, Inc. v. Accts., Inc. Servs.* (2007) 153 Cal. App. 4th 1308, 1324 (citing (*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 563). And *even if* Plaintiffs have satisfied the first element, Plaintiffs have failed to allege any facts to establish reasonable diligence for all of the reasons identified above. Additionally, Plaintiffs fail to allege what they discovered from the audit that finally put them on notice. *See Unpingco v. Hong Kong Macau Corp.*, 935 F.2d 1043, 1046 (9th Cir. 1991).

Given the overly general nature of Plaintiffs' "time and manner of discovery" allegations, and their failure to allege any reasonable diligence *at all*, Plaintiffs fail to establish all the elements to satisfy the delayed discovery rule, and the FAC must, be dismissed on the basis that all relevant statutes of limitations cannot be tolled.

## II. EACH AND EVERY ONE OF PLAINTIFFS' CLAIMS ARE BARRED BY THE CONTRACTUAL LIMITATIONS PERIODS SET FORTH IN EXHIBITS "A"-"C"

Whether the contractual limitations periods set forth in the Agreements attached to the FAC only apply to Plaintiffs' Breach of Contract Claim, or to all of Plaintiffs' claims, is irrelevant given the Court's December 18, 2023 Order. *See* Dkt. No. 32. As Plaintiffs correctly point out, the success of Defendants' Motion (and, thus, the survival of Plaintiffs' FAC) will "rise and fall on whether a tolling doctrine" applies. (Opposition 14:14-18). As set forth in detail above, Plaintiffs fail to sufficiently establish either tolling doctrine, thus barring each and every one of Plaintiffs' claims in the FAC.

## III. PLAINTIFFS' SIXTH CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT FAILS BECAUSE IT HAS NOT BEEN ADEQUATELY PLED

Although Plaintiffs claim that the FAC alleges specific misrepresentations, in reality, those allegations still fail to specifically describe, in detail: (i) what exactly

put Plaintiffs on notice of the fraud; (ii) what specific documents were falsified from Juan and Rosie from within JRE; and/or (iii) what was concealed by them in their respective positions within JRE. As set forth above, the only specifically identified misrepresentation by Juan and Rosie *from within JRE* was the alleged letter drafted by JRE's attorney *to a third party*. Plaintiffs' other specifically identified allegation of a misrepresentation came from a royalty report sent *by Defendants* to JRE – it was not a document created by Juan and Rosie from within JRE, which is critical to Plaintiffs' entertaining, but nevertheless false, tale that Juan and Rosie agreed to infiltrate Plaintiffs as part of a "scheme" to defraud Plaintiffs in exchange for a "secret agreement" with Defendants "whereby Rosie and Juan…would assume ownership and control over Cintas" eventually. *See* Dkt. No. 33 at ¶ 119.

Plaintiffs have, therefore, failed to allege fraudulent concealment with sufficient specificity, and this claim must be dismissed.

## IV.   THE COURT MAY JUDICIALLY NOTICE THE PRESS RELEASE

As an initial matter, the press release submitted for consideration by the Court pursuant to Defendants' Request for Judicial Notice was issued *by Plaintiffs*, not Defendants – as can be seen by the press release itself.[1] Dkt. No. 35-1 at pg. 9. Thus, any alleged bias argued by Plaintiffs in the Opposition is nonexistent. Additionally, the Court may judicially notice the press release as a publicly available website, and while the Court cannot rely on it for its truth, the press release's *existence* can be relied upon to show a seeming contradiction between the contents thereof, and what Plaintiffs have alleged regarding when they supposedly discovered Defendants' scheme. *See Mathews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012).

///

///

---

[1] Defendants' statement in their Motion that the relevant press release was issued "by Defendants" was merely an inadvertent typo.  And even a cursory review of the press release will establish that – as the press release clearly indicates that it was issued by Plaintiff JRE. *Id*. at pg. 9.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**V.**     **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss, without leave to amend.

DATED:  January 25, 2024          **ALTVIEW LAW GROUP, LLP**

By: _____
        JOHN M. BEGAKIS
        *Attorneys for Defendants*
        CINTAS ACUARIO, INC., a California
        corporation; and AYANA MUSIC, INC., a
        California corporation

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2024, a copy of **DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT** was served by electronic mail at the address below:

Christopher Q. Pham, Esq.
Marcus F. Chaney, Esq.
CRITERION COUNSEL, LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, CA 91367
cpham@criterioncounsel.com
mchaney@criterioncounsel.com


Frank Salzano, Esq.
Brady Williamson, Esq.
SALZANO, ETTINGER LAMPERT & WILSON, LLP
104 West 40th Street, 14th Floor
New York, NY 10018
fsalzano@selwlaw.com
bwilliamson@selwlaw.com


January 25, 2024                                          /s/ John M. Begakis
                                                         JOHN M. BEGAKIS

7
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS