1  John M. Begakis, Esq. (SBN 278681)
   john@altviewlawgroup.com
2  **ALTVIEW LAW GROUP, LLP**
   12100 Wilshire Blvd., Suite 800
3  Los Angeles, California 90025
   Telephone: (310) 230-5580
4  Facsimile: (562) 275-8954

5  *Attorneys for Defendants* CINTAS ACUARIO,
   INC., a California corporation, and AYANA
6  MUSICAL, INC., a California corporation

7                UNITED STATES DISTRICT COURT

8            FOR THE CENTRAL DISTRICT OF CALIFORNIA

9  | | |
   |---|---|
10 | JENNI RIVERA ENTERPRISES, LLC, a California limited liability company; and JAQUELIN CAMPOS, an individual, in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA, the successor-in-interest to the rights of Dolores J. Rivera, professionally known as Jenni Rivera, | CASE NO: 2:23-cv-07847-SB-JC |
11 | | **OPPOSITION TO NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS UNDER RULE 12(b)(6) AND TO STRIKE PUNITIVE EXEMPLARY DAMAGES UNDER RULE 12(f)** |
14 | Plaintiff, | |
15 | v. | **Hearing** |
16 | CINTAS ACUARIO, INC., a California corporation; AYANA MUSICAL, INC., a California corporation; and DOES 1 through 10, inclusive, | Date: June 28, 2024
Time: 8:30 a.m.
Courtroom: 6C |
18 | Defendants. | Action Filed: September 20, 2023
Trial Date: November 12, 2024 |
19 | CINTAS ACUARIO, INC., a California corporation; AYANA MUSICAL, INC., a California corporation, | |
21 | Counterclaimants, | |
22 | v. | |
23 | JENNI RIVERA ENTERPRISES, LLC, a California limited liability company; JANNEY MARIN RIVERA, an individual; JACQUELIN CAMPOS, an individual and trustee of THE DOLORES J. RIVERA LIVING TRUST; JENIKA LOPEZ, an individual; TRINIDAD MARIN, an individual; JUAN LOPEZ, an individual, and ROES 1-25, inclusive | |
28 | Counter-Defendants. | |

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIMS

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants/Counterclaimants CINTAS ACUARIO, INC., a California corporation ("Cintas") and AYANA MUSICAL, INC., a California corporation ("Ayana") (collectively, "Counterclaimants"), by and through their counsel of record, hereby oppose the Motion to Dismiss the First Amended Counterclaims (the "Motion") filed by Plaintiffs/Counter-Defendants JENNI RIVERA ENTERPRISES, LLC, a California limited liability company ("JRE"), JANNEY MARIN RIVERA, an individual ("Chiquis"), JAQUELIN CAMPOS, individually ("Campos") and in her capacity as executrix of the ESTATE OF DOLORES J. RIVERA (the "Estate"), JENIKA LOPEZ, an individual ("Jenika"), and JUAN LOPEZ, an individual ("Juan") (collectively, "Counter-Defendants") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") (the "Opposition").

## I.   INTRODUCTION

Counter-Defendants principally seek a dismissal of Counterclaimants' Second Counterclaim for Conversion on the basis that it is (a) preempted, (b) not sufficiently alleged, and/or (c) barred by the applicable statute of limitations. But, as the Court will see, this Counterclaim is not preempted because it involves the unlawful withholding of monies rather than the infringement of intangible rights protected by Copyright, and Counterclaimants have sufficiently plead the existence of such withholding by Counter-Defendants within the last three years. Accordingly, Counter-Defendants' Motion should be denied, or, alternatively, Counterclaimants should be granted leave to further firm up their allegations to establish how Counter-Defendants' wrongful withholding of monies occurred within the last three years.

## II.   RELEVANT ALEGATIONS

On or about April 15, 1993, September 7, 1995, and April 21, 1996, Jenni Rivera ("Jenni") entered into three separate recording agreements with Cintas, pursuant to which Jenni granted Cintas various rights in her music (among other

rights), in exchange for Cintas' agreement to pay Jenni a ten percent (10%) royalty under the 1993 Agreement, and a fifteen percent (15%) royalty under the 1995 and 1996 Agreements, on all income derived from the sale of albums containing such rights, in perpetuity. ECF Dkt. 61 at ¶¶ 18-27.

In or around 2005, Jenni also entered into another recording agreement with Counterclaimants, pursuant to which, Jenni again granted Counterclaimants various rights in her music, in exchange for Cintas' agreement to pay Jenni a fifteen percent (15%) royalty on all net income derived from the sale of all albums containing such rights, in perpetuity. Notwithstanding such terms, Counterclaimants instead agreed to pay Jenni a fifty percent (50%) royalty on all such net income. *Id*. at ¶ 28.

In or around the same time, on August 15, 2005, Counterclaimant Ayana entered into a License Agreement with Fonovisa Records, a division of Univision Music, LLC ("Fonovisa"). Pursuant thereto, Ayana licensed Jenni's obligations under the 2005 Recording Agreement directly to Fonovisa, in exchange for Fonovisa's agreement to pay various advances and subsequent royalty payments derived therefrom (the "Fonovisa License Agreement"). *Id*. at ¶ 29.

In or about 2009, Jenni requested an adjustment to the Fonovisa License Agreement, whereby Fonovisa would begin paying fifty percent (50%) of advances and subsequent royalty payments due thereunder *directly* to her, with the remaining 50% (i.e., Ayana's share) paid directly to Ayana. However, Counterclaimants continued to honor their royalty obligations to Jenni by paying her 50% of what Ayana was receiving from Fonovisa. In other words, Jenni was simultaneously receiving her entire 50% share of all monies due to her under the 2005 Recording Agreement directly from Fonovisa *as well as* half of Counterclaimant's 50% share (i.e., an additional 25% from Counterclaimants). *Id*. at ¶ 34.

In or about 2013, Counterclaimants discovered this oversight, and informed JRE. Counterclaimants received no objection to such notification, either from JRE or any of the other Counter-Defendants, and Counterclaimants therefore began

3
OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

applying royalties received pursuant to all of the Recording Agreements towards the overpayment balance. *Id*. at 35.

However, Counterclaimants are still owed substantial sums and allege that, Counter-Defendants have failed and refused to account to them for other advances and royalties later received pursuant to the Fonovisa License Agreement, including in 2022 when Counterclaimants requested an accounting. *Id*. at ¶ 36.

### III.   ANALYSIS

"To survive a motion to dismiss, a complaint or counterclaim must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 677-78 (internal citations omitted). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what…the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 (*citing Conley v. Gibson* (1957) 355 U.S. 41, 47). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

#### A.   Counterclaimants' Conversion Counterclaim Is Not Preempted

Counterclaimants' Second Counterclaim for Conversion is not preempted because it does not involve the same "subject matter" covered by the Copyright Act. A claim involves different subject matter "if qualitatively other elements are required, instead of or in addition to the acts of reproduction, performance, distribution or display…" *Trenton v. Infinity Broad. Corp.* (C.D. Cal. 1994) 865 F.Supp. 1416, 1428 (internal citations omitted). Here, the Conversion Counterclaim involves a completely different subject matter: Counter-Defendants' unlawful withholding of overpaid monies owed to Counterclaimants.

Copyright law protects the rights of authors who create works that include intangible sound recordings. 17 U.S.C. §§ 101 and 102. But the tangible byproduct

4

of those intangible rights (i.e., monies derived from the exploitation thereof) are qualitatively different, and any claim to such byproduct necessarily involves different subject matter and another element for the claim to be established: *ownership of a material object not covered by a claim for copyright infringement*. Put another way, Counterclaimants are not claiming wrongful exploitation of sound recordings and damages deriving therefrom, they are claiming that monies lawfully earned from the exploitation of such sound recordings were thereafter wrongfully retained by Counter-Defendants.

Accordingly, Counterclaimants' Second Counterclaim for Conversion does not involve the same subject matter as Counterclaimants' First Counterclaim for Copyright Infringement, and it is therefore not preempted.

### B.  Counterclaimants Have Alleged A Wrongful Act

Although Counterclaimants allege that they discovered an oversight that resulted in the overpayment of royalties to Jenni, Counterclaimants still also allege specific wrongdoing by Counter-Defendants. Specifically, the Counterclaims note that, although there was no objection by Counter-Defendants when Counterclaimants informed them of this oversight in 2013, Counter-Defendants refused "to account to Counterclaimants for other advances and royalties later received from Fonovisa pursuant to the Fonovisa License Agreement, including after Counterclaimants requested an accounting in 2022." ECF Dkt. 61 at ¶ 36. Counter-Defendants' willful decision to depart from the parties previous understanding and withhold certain overpaid monies, as well as to refuse to account to Counterclaimants as to any and all such monies, therefore constituted a wrongful act clearly alleged by Counter-Defendants.

Accordingly, Counterclaimants' Second Counterclaim for Conversion alleges a wrongful act, and it is therefore sufficiently alleged.

### C.  Counterclaimants' Conversion Counterclaim Is Not Time Barred

Even though Counterclaimants discovered their inadvertent overpayment in

5
OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

2013, Counter-Defendants' alleged conversion occurred within the three-year statute of limitations because it was not until much more recently that Counter-Defendants elected to depart from the parties' previous understanding regarding such monies and wrongfully refuse to repay, or account for, them. From 2013 onward, Counter-Defendants had no objection to Counterclaimants' application of royalties to the overpayment amount. In or around 2022, however, Counter-Defendants refused to account to Counterclaimants regarding all such overpaid amounts still outstanding, constituting a new, wrongful act of preventing Counterclaimants from recovering all amounts lawfully owed to them.

Accordingly, Counterclaimants' Conversion Counterclaim is not time-barred and is therefore sufficiently alleged.

### D. Punitive And/Or Exemplary Damages Are Warranted

In a conversion action, the plaintiff (or, in this case, counterclaimant) is entitled to recover the value of the property at the time of the conversion, with interest, or, an "amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted" plus "fair compensation for the time and money properly expended in pursuit of the property." *Voris v. Lampert* (2019) 7 Cal. 5th 1141, 1150–51 (citing Cal. Civ. Code § 3336). Punitive damages are also recoverable in a conversion action, upon a showing of malice, fraud, or oppression. *Id.* (citing Cal. Civ. Code § 3294); *see also Green v. Party City Corp.*, No. CV-01-09681 CAS (EX), 2002 WL 553219, at *5 (C.D. Cal. Apr. 9, 2002). Here, Counterclaimants have plead the existence of malice, fraud and/or oppression, via Counter-Defendants' willful and malicious refusal to account to Counterclaimants regarding their receipt of overpaid monies, and Counterclaimants are therefore entitled to seek punitive and/or exemplary damages in the event their Second Counterclaim for Conversion remains.

///

## IV. LEAVE TO FILE A FIRST AMENDED COMPLAINT SHOULD BE GRANTED

If this Court grants all or any portion of Counter-Defendants' Motion, leave to amend should be granted. "The Standard for granting leave to amend is generous…[as] the court considers five factors in assessing the propriety of leave to amend – bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *U.S. v. Corinthian Colleges* (9th Cir. 2011) 655 F.3d 984 (internal citations omitted). Notwithstanding Counter-Defendants' failure to address why each of the above factors weigh against granting leave, Counterclaimants should be given leave if the Motion is granted because an amendment to, for example, more specifically allege when Counter-Defendants' conversion occurred would not be futile.

## V. CONCLUSION

For the foregoing reasons, Counter-Defendants' Motion should be denied, or, in the alternative, leave should be granted for Counterclaimants to file further Amended Counterclaims curing any actual pleading deficiencies found by the Court.

Respectfully submitted,

DATED: June 7, 2024

**ALTVIEW LAW GROUP, LLP**

By: _____
JOHN M. BEGAKIS
*Attorneys for Defendants* CINTAS ACUARIO, INC., a California corporation; and AYANA MUSIC, INC., a California corporation

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, a copy of **OPPOSITION TO NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS UNDER RULE 12(b)(6) AND TO STRIKE PUNITIVE EXEMPLARY DAMAGES UNDER RULE 12(f)** was served by electronic mail at the address below:

Christopher Q. Pham, Esq.
Marcus F. Chaney, Esq.
CRITERION COUNSEL, LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, CA 91367
cpham@criterioncounsel.com
mchaney@criterioncounsel.com

Frank Salzano, Esq.
Brady Williamson, Esq.
SALZANO, ETTINGER LAMPERT & WILSON, LLP
104 West 40th Street, 14th Floor
New York, NY 10018
fsalzano@selwlaw.com
bwilliamson@selwlaw.com

June 7, 2024                                  /s/ John M. Begakis
                                          JOHN M. BEGAKIS