UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNI RIVERA ENTERPRISES LLC et al., <br><br> Plaintiffs, <br><br> v. <br><br> CINTAS ACUARIO INC. et al., <br><br> Defendants. | Case No. 2:23-cv-07847-SB-JC <br><br> ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM [DKT. NO. 65] |

    In this dispute over the stewardship of singer Jenni Rivera's estate, Defendants Cintas Acuario and Ayana Musical (the Counterclaimants) assert counterclaims for copyright infringement and conversion against Plaintiffs Jenni Rivera Enterprises (JRE) and Jacquelin Campos (who manage and represent the estate) and the individual beneficiaries of the estate, Jenika Lopez, Juan Lopez, Trinidad Marin, and Janney Marin Rivera (collectively, the Counterdefendants). Dkt. No. 61 (Defs.' Answer and Am. Countercls. (AAC)). Counterdefendants move to dismiss the counterclaim for conversion and to strike Counterclaimants' request for punitive damages. Dkt. No. 65. The Court heard argument on the motion on June 14, 2024. Because the conversion claim alleged in the AAC is barred by the statute of limitations, the Court grants the motion.

I.

    The factual background for the dispute over Rivera's estate and trust has been set forth in two prior orders on the pleadings and need not be repeated here. Dkt. Nos. 32 (Order Granting Mot. to Dismiss Compl.); 42 (Order Denying Mot. to Dismiss First Am. Compl.). As a basis for the conversion counterclaim, the AAC alleges that Rivera recorded 10 albums pursuant to the 2005 Fonovisa License

1

Agreement. Dkt. No. 61 ¶ 30.[1] Counterclaimants paid Rivera royalties equivalent to 50% of net income received under that agreement. *Id.* ¶ 28. Before 2009, Fonovisa would pay 100% of net income to Defendant Ayana, who would pay 50% to Rivera and retain the other 50% for itself. *Id.* ¶ 34. In 2009, Rivera and Counterclaimants modified the arrangement so that Fonovisa would pay Rivera her 50% share directly. *Id.* From 2009 to 2013, however, as a result of Counterclaimants' "inadvertent oversight," Ayana continued to pay Rivera 50% of what it received from Fonovisa, even though Fonovisa was already paying Rivera her 50% share directly. *Id.* Consequently, Rivera received an additional 25% of net income which should have gone to Ayana. *Id.* In 2013, after Rivera's death, Counterclaimants discovered the oversight and notified JRE (Rivera's successor-in-interest) of the overpayment. *Id.* ¶ 35. Counterclaimants "received no objection" to their notification, and from that date began withholding Rivera's royalties received in connection with other recording agreements and applying them toward the balance of the overpayment. *Id.* Counterclaimants do not allege that they paid any royalties after 2015. *Id.* ¶ 33. Counterclaimants filed a counterclaim for conversion based on these allegations, seeking to recover $774,413.75 in overpayments. *Id.* ¶ 54.

Counterdefendants move to dismiss the conversion claim on multiple grounds, asserting that it is barred by the statute of limitations, fails to plead essential elements of the claim, and is preempted by the Copyright Act. Dkt. No. 65. Counterclaimants did not file an opposition by the deadline; instead, they filed a stipulation 13 days after the deadline requesting to continue the hearing and allow a late-filed opposition, which the Court ruled on separately.[2] Dkt Nos. 67–69.

II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] All paragraph citations to Dkt. No. 61 refer to the paragraph numbers in the Amended Counterclaims (not the Answer) comprising pages 30–49 of the filing.

[2] The Court denied the motion to continue the hearing but allowed the late-filed opposition. Dkt. No. 69.

(2009).  In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

Dismissal under 12(b)(6) on statute of limitations grounds is only appropriate "when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (cleaned up).  Dismissal should only be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980) (internal quotation omitted).

### III.

#### A.

The straightforward application of the statute of limitations resolves the counterclaim for conversion here.  The statute of limitations for a claim of conversion is three years.  Cal. Civ. Proc. Code § 338(c).  Generally, the statute begins to run at the time the property is wrongfully taken but in certain cases is tolled until the plaintiff has knowledge or notice of the conversion. *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 916–17 (9th Cir. 1996).

It is clear from the face of the AAC that the overpayment began in 2009 and Counterclaimants discovered the error in 2013.  Counterclaimants do not allege they have paid any royalties since 2015.  Even if the discovery rule or fraudulent concealment were to apply here, these doctrines would only serve to toll the running of the statute until Counterclaimants had knowledge or notice of the conversion. *See Conerly*, 623 F.2d at 120 (fraudulent concealment "provides for tolling until the aggrieved party discovers the facts"); *Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (Cal. Ct. App. 1983)  (discovery rule "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue").  At the latest, then, the statute of limitations thus began running in 2013 and expired in 2016.

In their opposition, Counterclaimants do not argue a tolling doctrine applies. Instead, they rely on the AAC's conclusory allegation that:

> Within the past three years, however, Counterdefendants have wrongfully taken possession of, and elected to exercise wrongful dominion over, such overpaid amounts, are using such amounts for their own personal and financial benefit, and are continuing to knowingly and intentionally refuse to return such amounts despite their knowledge of Ayana's right thereto via Counterclaimants' demand for the return thereof.

Dkt. No. 61 ¶ 56.

The only context the opposition provides for this paragraph is an additional allegation, not included in the AAC, that "in or around 2022," Counterdefendants refused to provide an accounting for the overpaid amounts, "constituting a new, wrongful act." Dkt. No. 68 at 6. But a refusal of a later request for accounting does not reset the statute of limitations on a claim for conversion. *Bell v. Bank of Cal.*, 153 Cal. 234, 243 (1908). Facing a similar set of facts, the California Supreme Court held that the statute of limitations began to run on a conversion claim at the time the property was converted, notwithstanding the plaintiff's later request for an accounting. *Id.* Instead, an accounting is a remedy—not the original tort—and is therefore "merely incidental to the main purpose of the suit." *Id.* The tort, not the remedy, determines the running of the statute of limitations, which begins to run when the money for which the accounting was sought was originally paid. *Id.*; *accord Jefferson v. J. E. French Co.*, 54 Cal. 2d 717, 718 (1960). And to the extent the reference to the past three years is intended to resurrect the conversion claim at the time Campos became CEO of JRE, this argument makes little sense. Counterclaimants have been aware that JRE has possessed the overpaid royalties since 2013. The fact that the CEO changed 9 years later is irrelevant. The conversion claim is barred by the statute of limitations.[3]

---

[3] In light of this conclusion, the Court does not reach the issues of preemption or whether the AAC adequately pleads the elements of conversion. Nor does the Court have to consider the merits of the motion to strike the request for punitive damages, because that request depended entirely on the viability of the conversion claim. *See* Dkt. No. 68 at 6 (acknowledgement by Counterclaimants that they are entitled to punitive damages only "in the event their Second Counterclaim for

B.

Counterclaimants request leave to amend. Dkt. No. 68 at 7. Rule 15(a)(2) requires that "[t]he court should freely give leave [to amend] when justice so requires," and the Ninth Circuit has stated that the policy favoring amendments "is to be applied with extreme liberality," *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave may be denied, however, for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Based on Counterclaimants' position at the June 14 hearing on the motion, the Court construes their request as one for leave to amend to assert a breach of contract claim instead of a claim for conversion. The Court GRANTS this request for leave to amend.

IV.

The Court grants the motion to dismiss the amended counterclaim for conversion with leave to amend. Counterclaimants shall file their second amended counterclaims by no later than June 21, 2024.

Date: June 14, 2024

                                                            Stanley Blumenfeld, Jr.
                                                            United States District Judge

---

Conversion remains"). Thus, the dismissal of the conversion claim sweeps along with it the request for punitive damages.